# THE WHITE AUTOMOBILE COMPANY
## *vs.*
## WILLIAM C. DORSEY.

*Pleading*: *several counts; general demurrers; duplicity in pleas;*
*distinct causes in one count. Bill of particulars*: *waiver*
*of—; by pleading. Warranties*: *no special terms re-*
*quired; breach;. rights . of purchaser; damages;*
*price of chattel as evidence; return of chattel;*
*waiver. Evidence*: *experts. Written*
*contracts*: *parol evidence; variance.*
*Prayers*: *on theory of which*
*no evidence.*

Where a declaration contains several counts, some of which
are good and some bad, a demurrer to the whole declaration
should be overruled.                               p. 255

A count in a declaration which embraces two or more dis-
tinct causes of action, is void. for duplicity.    p. 256

A count which embraces a breach of express warranty that a
machine is sound, etc., and a breach of a contract to keep
the machine in repairs, etc., violates the rule against duplicity
in pleading.                                       p. 256

By pleading to the declaration a defendant waives his right to
exact a bill of particulars..                      p. 256

In order to create an express warranty, it is not necessary that
the word "warranty" be used.                       p. 258

Any affirmation of the quality or condition .of the thing sold
(apart from the mere opinion or belief), made by the seller
at the time of the sale, for the purpose of assuring the buyer
of the truth of the facts affirmed, and inducing him to make
the purchase, if,so received and relied on by the purchaser,
is an express warranty.                            p. 258

Upon a breach of warranty, the purchaser may return the chattel within a reasonable time after discovering the breach, and recover in *assumpsit,* on the common counts, the amount paid; or he may retain the chattel and sue on the contract for damages for the breach.                          p. 258

In the latter case the measure of damages ordinarily is the difference between the value of the article with the defect warranted against, and the value it would have had without the defect.                                           p. 258

The price is strong *prima facie* evidence of the value of the article if sound according to the warranty.         p. 258

Persons having technical and peculiar knowledge on certain subjects are allowed to give their opinions as experts, when the question involved is such that the jurors would be incompetent to draw their own conclusions from the facts without the aid of such evidence.                           p. 258

A witness not possessed of the requisite technical knowledge and experience should not be allowed to testify as an expert.
                                                      p. 263

Evidence must correspond with the allegations and be confined to the issues of fact made by the pleadings.         p. 259

Any circumstances that may afford a fair and reasonable presumption of the facts to be proved are to be received and left to the consideration of the jury; but collateral facts which are essentially misleading should not be received in evidence.
                                                      p. 259

Where an action for breach of warranty is brought on certain express warranties, evidence of other and different warranties are inadmissible.                           p. 259

Where a purchaser of an automobile received and used the car four months before he paid for it, and continued to use it for several months thereafter, he forfeited his right to repudiate the contract and return the car.          p. 260

Proof that other owners had trouble with cars of the same make is not admissible in evidence, without showing under what conditions such cars were run and used.         p. 263

Prayers are erroneous when based upon a theory of which there is no evidence legally in the case.                          p. 266

Where the written contract for the purchase of an automobile concluded: "Here follow with form of warranty," but the terms of the warranty were omitted, parol evidence may be introduced to show what were the terms of the warranty.

p. 268

In such a case such proof does not contradict, or vary, but is perfectly consistent with the written contract.          p. 268

*Decided January 14th, 1913.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Z. Howard Isaac* filed a brief for the appellant.

*Charles L. Merriken and John S. Ensor filed* a brief for the appellee.

BURKE, J., delivered the opinion of the Court.

On the sixteenth day of June, 1911, William C. Dorsey brought suit in the Baltimore City Count against the White Company and the White Automobile Company. The last-named defendant is a corporation. Both defendants filed the general issue pleas, and the White Company filed a further plea denying its incorporation. Issue was joined upon the pleas of the White Automobile Company.

Upon the suggestion and affidavit of the defendants, the case was removed to the Court of Common Pleas for trial. The trial in that Court began on the 28th of February, 1912, and on the 9th day of March the jury rendered a verdict in favor of the plaintiff for two thousand dollars, and from the judgment entered on that verdict the defendant has brought this appeal.

The record is voluminous, and presents for consideration seventy-five bills of exception taken by the defendant during the course of the trial.

A clear statement of the issues raised by the pleadings and of the general purport and effect of the evidence will dispense with a discussion of each exception, as many of these exceptions present precisely the same question, and may, therefore, be disposed of by such legal principles as we shall determine to be applicable to the case.

The declaration, as originally filed, contained three common counts, viz.: 1. For money paid by the plaintiff for the defendants at their request; 2. And for money had and received by the defendants for the use of the plaintiff; 3. And for money found to be due from the defendants to the plaintiff on accounts stated between them. There was also a special count. This count was, by leave of the Court, withdrawn by the plaintiff, and, therefore, need not be considered. During the trial, upon leave granted, another special count was filed, which is called in the record the sixth count, although it is really the fifth count, and will be so referred to in this opinion. This count alleged that the defendants "on or about the 26th day of May, 1910, offered to sell to the plaintiff a motor car or automobile, known as the "White Steamer," model 00, 1910, at and for the sum of two thousand dollars, and as an inducement to said plaintiff to make said purchase, said defendants by their servants and agents, then and there represented and warranted to the said plaintiff that said automobile was sound, free from defects in workmanship, and materials, and would be satisfactory to the plaintiff, *and that said defendants would keep the same in satisfactory running condition, without expense to the plaintiff, for a period of one year from the date of said purchase.*"

It further alleged that the plaintiff, relying upon said representations and believing them to be true, agreed to purchase and did purchase said automobile and paid therefor the sum of two thousand dollars, and received the

machine and undertook to use it. The count then alleged
the breach of the contract on the part of the defendants in
these words: "Said plaintiff found that said automobile was
not in sound condition, free from defects in workmanship
and material, but, on the contrary, was unsound and defec-
tive as to workmanship and material, and would not and
could not be run or operated as an automobile in sound con-
dition could and would be run, and constantly required
repairs, and was constantly out of order and out of repair,
which facts were made known to the defendants, *but that
said defendants failed and refused to put said car in good
order and repair, etc."*

After the fifth special count had been filed the defendants
demurred to the whole declaration and to each count thereof,
and the Court overruled the demurrer. They then filed a
demand for a bill of particulars which the Court denied.
The pleas filed with the original declaration were re-filed
to the fifth count, and issue was joined thereon.

During the progress of the trial judgment was entered in
favor of the White Company, and the trial proceeded against
the White Automobile Company. The appellant renewed its
demand for a bill of particulars, which the Court again
denied.

The testimony, appearing in the record, was then offered
by the respective parties upon the issues of fact raised by
the pleadings. We will first consider the questions of law
raised by the demurrer and the demands for a bill of par-
ticulars, and these are: First, Was the fifth count a good
count? Second, Was the appellant entitled as a matter of
right, under the circumstances stated, to a bill of particu-
lars? As to the first question. As the declaration contained
the three common counts, each of which was good, and one
special count, there was no error committed in overruling
the demurrer to the whole declaration. It is well settled
that where a declaration contains several counts, some of
which are good and some bad, a demurrer to the whole
declaration will be overruled. In *Willing* v. *Bozman,* 52

Md. 44, the familiar and long settled rule was announced that a defendant will not be entitled to judgment on demurrer to the whole declaration unless all the counts thereof were bad. The demurrer to each of the common counts was properly overruled, as each of those counts was good. But it should have been sustained as to the fifth count, as it clearly offended against the rule which forbids duplicity in pleading. The count combines two distinct causes of action; first, a breach of the express warranty that the automobile "was sound, free from defects in workmanship and material, etc," ; and secondly, a breach of a contract on the part of the defendants "to keep the same in satisfactory running condition, without expense to the plaintiff, for a period of one year from the date of said purchase." It was proper for the plaintiff to have embodied in his declaration in separate counts both causes of action; but their combination in one count was a typical example of duplicity in pleading, and rendered this count bad, and, therefore, the demurrer to it should have been sustained. *Chitty on Pleadings,* 225; *Poe on Pleadings,* Vol. 1, sec. 733; *Stearns* v. *The State,* 81 Md. 341; *State* v. *McNay,* 100 Md. 625.

As to the second question: The general rule is that in cases where the defendant is entitled to demand the particulars of the plaintiff's claim he should make the demand before pleading. "By pleading to the declaration," says Mr. Poe in his work on Practice, sec. 120, "it is ordinarily held that he loses or waives his right to exact the particulars, for by the very act of pleading he virtually admits that he has sufficient knowledge of the details of the plaintiff's cause of action."

The record shows that the appellant filed the general issue pleas on the 15th of July, 1911, and the demand for a bill of particulars was not made until the 29th of February, 1912, after the trial had begun. So far at least as the common counts are concerned, there is nothing in the record to prevent the application of the general rule stated by Mr.

Poe, and, upon the authority of *Black* v. *Woodrow,* 39 Md.
194, the appellant was not entitled to a bill of particulars
under the fifth count.   The sixth count in that case alleged
"that the appellees and appellant agreed together that the
former would build for the latter a frame house on his
farm, in the manner and according to the specifications stated
and set forth, and that the appellees in pursuance of the
contract, commenced and progressed in the work of erecting
such house, and expended large amounts of money in pro-
viding materials therefor; and although the appellees were
then and there ready and willing and anxious to comply
with the contract in every particular, and to build the house
in every respect in exact accordance with the contract, they
were prevented from so doing by the express orders of the
appellant, whereby they sustained damage to the amount of
six thousand dollars."   Speaking of a demand of the defend-
ant for the particulars of the plaintiff's claim under that
count, JUDGE ALVEY said: "But as to the sixth count, the
particulars were unnecessary, and were not demandable, as
the count itself was special, setting out fully the contract, and
alleging as a breach the appellant's prevention of perform-
ance of the contract by the appellees, and consequent dam-
age sustained by them.   The count, therefore, furnished
sufficient notice of the nature and character of the claim,
and of the evidence required to support it.   This is all that
a defendant has a right to demand, in regard to the certainty
of the plaintiff's claim."

We now pass to the consideration of seventy-three bills of
exception taken by the appellant to rulings made by the
trial Court upon questions of evidence.   As many of these
exceptions relate to the law of warranty, the measure of
damages in cases of breach of warranty, the competency of
certain witnesses to express opinions as to alleged mechan-
ical and structural defects in the automobile known as the
White Steamer Model 00 1910, and to the admission of
testimony alleged to be irrelevant, some general principles,

bearing upon the precise questions presented on the branch of the case, will be stated.

*First.* It was stated in *Osgood* v. *Lewis,* 2 H. & G. 496, a case which has been consistently followed in this Court, that "to create an express warranty, the word "warrant" need not be used; nor is any precise form of expression required. Any affirmation of the quality or condition of the thing sold (not uttered as a matter of opinion or belief) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the fact affirmed, and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty."

*Second.* Upon a breach of the warranty two remedies are opened to the buyer; first, he may return the chattel, if delivered, within a reasonable time after discovering the breach, and recover back in assumpsit on the common counts the amount paid; or, secondly, he may retain the chattel and sue upon the contract for damages resulting from the breach of the warranty.

*Third.* In a suit for breach of warranty the measure of damages ordinarily is, the difference between the value of the article with the defect warranted against and the value it would have borne without that defect, and the price paid is strong *prima facie* evidence of its value if it had been sound, or corresponded with the warranty.

*Hyatt* v. *Boyle,* 5 G. & J. 111; *Franklin* v. *Long,* 7 G. & J. 407; *Clements* v. *Smith,* 9 G. 156; *Lane* v. *Lantz,* 27 Md. 216; *Miller* v. *Grove,* 18 Md. 242; *Horn* v. *Buck,* 48 Md. 358; *Horner* v. *Parkhurst,* 71 Md. 116.

Four: The general rule as to the admissibility of expert evidence is that persons having technical and peculiar knowledge on certain subjects are allowed to give their opinion when the question involved is such that the jurors are incompetent to draw their own conclusions from the facts without the aid of such evidence. *Harris* v. *Consolidation Coal Company,* 111 Md. 209; *Dashiell* v. *Griffith,* 84 Md. 377; *Anne Arundel County* v. *Stansbury,* 107 Md. 210.

Five: The evidence must correspond with the allegations, and be confined to the issues of fact made by the pleadings. Any circumstances that may afford a fair and reasonable presumption of the fact to be proved are to be received and left to the consideration of the jury, who are to determine upon their precise force and effect; and whether they are sufficiently satisfactory to warrant them in finding any of the facts in issue; but collateral facts which are essentially misleading should not be received in evidence. *Brooke* v. *Winters*, 39 Md. 510; 11 Am. & Eng. Enc. of Law, 501-503.

The rulings on the admissibility of evidence will be tested by these principles. The fifth count declared on an express warranty of the automobile by the appellant. It was essential to the plaintiff's right to recover that he establish by competent evidence to the satisfaction of the jury some one of the material representations alleged. Evidence of other and different warranties were manifestly inadmissible under the pleadings.

The car was sold by James McC. Primrose, a sales agent of the appellant, and the contract of purchase was signed on the 27th day of May, 1910. The appellee paid five hundred dollars cash on account of the purchase price, and gave to the appellant his three promissory notes each for the sum of five hundred dollars, payable in sixty, ninety and one hundred and twenty days respectively from their date. The car was delivered to him on the following day, and he retained possession of it and used it when in running condition until December, 1910, at which time he demanded that the appellant take the car back and return the purchase money. This was declined. The appellee left the car at the appellant's garage and instituted this suit. He paid the three promissory notes as they matured, although as he testified he became aware of the defects in the car within a few days after it came into his possession, and he gave a long and detailed account of the many difficulties and troubles he had encountered in the operation of the car. But he did not repudiate

the contract and return the car within a reasonable time after he had discovered the defects which he complained of; but kept it for at least six months thereafter. Upon the facts in evidence showing full knowledge by the appellee of the alleged defects, and the retention and use of the car by him for such a length of time after he had acquired such knowledge, we have no difficulty in holding that he had abandoned his right to rescind the contract, and, therefore, the only affirmative remedy open to him was a suit for damages for breach of the warranty. It is undoubtedly true that the plaintiff had much trouble with the car; but whether this was due to the causes alleged in the fifth count of the *narr.,* or whether it was due to his own carelessness in the operation of the machine, were vital questions in the case, and upon them there was a great conflict in the evidence.

The appellee's contention before the jury was that the failure of the machine to give satisfaction was due to mechanical and structural defects; the appellant contended that no such defects existed; but that the difficulties encountered by the plaintiff resulted from his own negligence in the management and operation of the car.

It is apparent to any one who reads the record that no witness who did not possess some technical knowledge of mechanical engineering, or practical experience in the construction or repair work of automobiles was competent to give his opinion to the jury as to the structural defects in this machine. This is clear from the testimony which describes the mechanical arrangements of the car and the functions to be performed by its various parts. This testimony showed that the arrangement of the car was based upon approved principles of mechanical engineering and was highly technical in its character.

A full description of the car and the principles upon which it was constructed were given by Rolla C. Carpenter, a professor of experimental engineering in Cornell University, and George D. Carpenter, an experienced mechanical

engineer, who had charge of the actual construction of this type and model of White Steamers.

Professor Carpenter, speaking of the changes which had been made in the White Steamer, said:

Q. In case of change in the design of motors in the machine from year to year, what part, if any, have you played in those features of the present White Machine?

A. Nearly all the proposed improvements have been discussed with me and I have gone over nearly all of them, usually a year in advance of their being offered for sale, and that is specially true with respect to the power plant.

Q. What has been the policy of the company in that respect so far as the designing policy of the company is concerned?

A. The policy has been to use the very best material that possible could be obtained for the purpose required, and the policy has been to get the best of workmen and manufacture materials in the best possible manner, and to design the car as nearly perfect as possible. That of course does not mean that they cannot be improved, because every year since I have been connected with the industry has shown a distinctive advance over the previous years. * * *

Q. I will ask you in regard to Model 00, 1910 Machine, what inherent defects, if any, are there in that machine?

A. I believe that machine has no inherent defects.

Q. What leads you to make that remark?

A. I know the structure of the machine and the reasons for making such changes in design as was made in the previous years. I also know as a fact that the design of the engine and its parts in the preceding year 1909 were essentially the same, and I believe that the changes which were made, were made for the purpose of improving the action and securing better results than those in the previous years.

Q. What part, if any, did you play in the changes made that you speak of?

A. I examined very carefully the drawings that were prepared for the new engine that was designed for what we know as the old car.

The Court: Do you mean the 00 Model of 1910?

A. That is the same in design as the old car, or preceding car, with the exception of some slight changes, and it is quite a differently designed engine from the engine preceding. The changes and method of driving the pump system were carefully thought out and intended to give better lubrication to the working parts of the pump. * * * In my opinion this model had ample protection in its construction to prevent any water going from the feed pump into the crank chamber, and consequently of being carried over into the ball bearings by action of the machinery. This provision which was made in the car consisted of stuffing boxes, which I believe have been quite fully explained, which could be simply adjusted, and when properly adjusted would permit no water to pass from the pump into the crank chamber. The stuffing boxes were located in a position where they were easily accessible, and the work of keeping them in order was certainly very slight. The stuffing box of the steam engine proper in this particular model is separated from the crank chamber by the peculiar type of cross head used. The cross head being the portion of the engine which forms the connecting part between the connecting rod and the piston rod, the piston rod moving in a vertical line up and down, the connecting rod having its lower end attached to the crank and consequently rotating in its upper end connecting with the piston rod. The part that connects the devices in this particular model was made with a stuffing box in cylindrical form so as to prevent any water from the engines cylinders, which might possibly escape, getting down into the crank case below. So that the model was made in every way, so far as I can conceive so as to prevent the condition of water occurring in the crank shaft unless it was badly operated, or badly taken care of.

Q. What is the character of material used in this Model 00 1910?

A. The character of material is of the highest order that it is possible to obtain. For the generator, Shelby drawn tubes are used. Very frequently high grade steel is employed in every case where it was believed to be necessary.

Q. What about the character of workmanship upon the car?

A. The workmanship was of the highest order that it is possible to obtain. The various parts are made in automatic machines, and they are subject to very close gauging, usually they must be within one one-thousandth of an inch of the size before they are passed."

Mr. George E. Carpenter gave a fuller description of the car, and its actual construction and the methods of its operation.

The testimony of these witnesses and others showed that the principles upon which the car was constructed are somewhat difficult for one unacquainted with machines to understand.

There was error in the rulings embraced in the second, third, fourth, fifth, sixth, sixteenth and eighteenth exceptions in which James McC. Primrose, who by his own admissions knew practically nothing about the mechanical construction of the car, was permitted to state that it was defective. The same is true with respect to the evidence of A. B. Hoen in the twenty-ninth exception. These witnesses were not qualified to express any opinion upon the subject.

The next group of exceptions is that wherein the Court admitted the evidence of the owners of the same model of White Steamer cars of the trouble they encountered, and that their experiences were similar to those of the plaintiff. It was admitted by the defendant that trouble would ensue if the cars were not operated under proper conditions, and to admit this character of evidence, as was done, without stating under what conditions the cars were run would be

most misleading and injurious. It would permit the jury to infer that there were inherent defects in the plaintiff's car from the mere fact that owners of similar cars had experienced like troubles. To do this would be to set up a false standard of judgment. This error occurs in the twenty-seventh, twenty-eighth, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, fortieth, forty-first, forty-second, forty-third, forty-fourth, forty-fifth, forty-sixth, forty-seventh, forty-eighth, forty-ninth, fiftieth, fifty-first, fifty-second exceptions. The forty-first and forty-second exceptions were also wrong on those grounds.

The next group is that wherein the plaintiff gave evidence of warranties not put in issue by the pleadings. This character of testimony was clearly inadmissible, and the evidence adduced under this head was calculated to do the defendant great harm. This error appears in the twelfth, thirteenth, fourteenth, fifteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third and twenty-fourth exceptions.

We find no error in the seventeeth, thirtieth, thirty-first, thirty-eighth, thirty-ninth, fifty-third and fifty-fourth exceptions. In these exceptions, except in the thirty-first, the witnesses were merely stating relevant facts within their knowledge and observation. There was clear error in the seventh exception, wherein it appears that Primrose was permitted to state as a fact that the president and manager of the appellant knew of the defective condition of the car prior to the sale to the plaintiff, *because,* as he stated, other cars of the White Steamer Model had gone wrong in their bearings and crank shaft.

We find no error in the first, eighth, twenty-fifth, twenty-sixth, thirty-second, fifty-fifth, fifty-sixth, fifty-seventh, sixtieth, sixty-second, sixty-third, sixty-sixth, sixty-eighth, sixty-ninth, seventy-third and seventy-fourth exceptions. The rulings embraced in the fifty-eighth, fifty-ninth, sixty-first, sixty-fourth, sixty-fifth, sixty-seventh, seventieth, seventy-first and seventy-second exceptions were erroneous.

There was clear error in the ninth, tenth and eleventh exceptions. The plaintiff in these exceptions was attempting to show the damages which he claimed to have sustained by the breach of the warranty. This was a comparatively simple matter. He had proved the price paid for the machine, and this was evidence of its value had it been free of the defects warranted against. But he contended that it did not comply with the warranty, and to show the damages he had merely to prove the actual value of the machine at the time of sale, and the difference between the price paid and the actual value of the car, at the time of sale would have been under the evidence the amount to which he was entitled. The questions propounded to and the answers of the witness in the ninth and tenth exceptions are so involved and confused that it is difficult to understand what the witness testified to on this material question. If we were to hazard an opinion we should say the witness was speaking of the value of the car on the date he was testifying.

This brings us to the action of the Court on the prayers, and the special exceptions thereto filed by the defendant. The plaintiff offered one prayer which the Court modified and granted as amended. The defendant filed two special exceptions to this prayer which the Court overruled. The defendant submitted twenty prayers for instructions to the jury, but it subsequently withdrew its third prayer. The Court granted the tenth and eighteenth prayers, and modified and granted as modified its ninth, nineteenth and twentieth prayers, and refused its first, second, fourth, fifth, sixth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth prayers.

The defendant excepted to the refusal of the prayers above specified; but took no exceptions to the amendments made by the Court to its ninth, nineteenth and twentieth prayers.

The plaintiff's first prayer as offered was as follows: "If the jury believe from the evidence that the defendant sold to the plaintiff the automobile mentioned in the evidence and as an inducement to the plaintiff to make said purchase

represented that the said automobile was sound and free from defects in workmanship and material, and that the plaintiff relying on said representations purchased and accepted the said automobile and paid therefor the sum of two thousand dollars; and if the jury shall further find that at the time of said purchase, said automobile was not sound and free from defects in workmanship and material, but was unsound and defective in workmanship and material, then the plaintiff was entitled to recover the difference, if any, between the price so paid for said automobile and the fair value of said automobile so delivered, at the time of sale, with interest in the discretion of the jury." The form of this prayer was entirely proper, and *under the proof in this case* it should have been granted. But the Court modified the prayer by adding the following clause: "Provided, the jury further find that said unsoundness and defective condition was not due to want of ordinary care and skill in the plaintiff or his agents in managing and propelling said automobile." This amendment should not have been made. It was wholly unnecessary, and compelled the plaintiff to assume a greater burden than the law cast upon him. The defendant filed two special exceptions to this prayer upon the following grounds: First, that there was no legally sufficient evidence offered to show that the automobile was not sound and free from defects in workmanship and material at the time of sale, or that at that time it was unsound and defective; secondly, that there was no legally sufficient evidence offered to show the difference between the price paid and the fair value of the automobile at the time of sale. The first special exception was properly overruled. If the admissible evidence offered on the part of the plaintiff be assumed to be true, the jury might have reasonably inferred that the car was unsound and defective within the terms of the warranty.

The second special exception should have been sustained. This conclusion results from our ruling on the ninth, tenth and eleventh exceptions which embrace the only attempt made by the plaintiff to show the actual value of the car

at the time of the sale with the defects warranted against. The defendant's first and second prayers asked the Court to instruct the jury that under the pleadings and evidence there was no legally sufficient evidence to entitle the plaintiff to recover under either of the common counts. These prayers should have been granted, because there had been no valid rescission of the contract, and, therefore, recovery would be had, if at all, only under the fifth count. The fourth prayer refers to the pleadings, and asserts that no legally sufficient evidence had been offered to entitle the plaintiff to recover under the fifth count. This prayer assailed the sufficiency of the fifth count which had been demurred to (*Leopard* v. *The C. & O. Canal Co.,* 1 Gill, 222; *Baltimore City Passenger Ry. Co.* v. *Wilkinson,* 30 Md. 229; *Ward* v. *Schlosser,* 111 Md. 528); and as we have held this count to be defective, the prayer should have been granted. As there could have been no recovery under the common counts, and as the fifth count was bad, the defendant's fifth prayer which asserted that under the pleadings and evidence there was no legally sufficient evidence to entitle the plaintiff to recover should likewise have been granted. The sixth prayer should also have been granted, as there was no legally sufficient evidence in the case of actual damages. The reason for this holding is stated in the consideration of the defendant's second special exception.

There was no reversible error in refusing the defendant's seventh prayer, as it was given the full benefit of the matters relied on therein by its tenth prayer, which was granted. The eighth and eleventh prayers should have been granted. They denied the plaintiff's right to recover damages because of the failure of the defendant to employ a competent chauffeur for the plaintiff, or damages caused to the plaintiff's car by the chauffeur, Boyd Primrose. These prayers were manifestly correct, as no recovery could properly be had under the issues for any damages resulting from any of the causes stated in these prayers. The defendant's twelfth and thirteenth prayers were proper, and should have been grant-

ed.   The fourteenth prayer was covered by the granted prayers, particularly the tenth.   The defendant got the benefit of its fifteenth, sixteenth and seventeenth prayers by the eighteenth prayer, which was granted, wherein the Court told the jury that there was no legally sufficient evidence of a valid rescission by the plaintiff of the contract of purchase.

There remains for consideration one other question.  The written contract of purchase, which appears in the record, concludes as follows: "Here follow with form of warranty." But the terms of the warranty were omitted.   The contract is silent upon the subject.   The defendant contends that parol evidence is inadmissible to prove the terms of the warranty, because the law forbids the introduction of parol evidence to vary the terms of a written instrument.   But that doctrine has no application to this case, which falls clearly within the principle announced in *McCreary* v. *McCreary,* 5 G. & J. 147, that parol evidence is admissible to prove any collateral, independent facts, about which the written agreement is silent; because such proof is perfectly consistent with, and does not in the least tend to contradict, vary, or explain the written instrument."   See also *Bladen* v. *Wells,* 30 Md. 584; *Basshor* v. *Forbes,* 36 Md. 166; *Roberts* v. *Bonaparte,* 73 Md. 191.

For the errors indicated, the judgment must be reversed and a new trial awarded.

> *Judgment reversed, a new trial awarded, the*
> *appellee to pay the costs above and below.*