# RITTENHOUSE, WINTERSON AUTO. COMPANY

*vs.*

## JOHN A. KISSNER.

*Contracts: sale of chattels; no meeting of minds as to party making sale; parol evidence. Warranty: breach of—; action for—; pleading; mere representations in trade; question for jury. Damages for breach of warranty. Expert witnesses.*

The rule that parol evidence is not admissible to vary the effect of a written contract can not be availed of, when it appears that the written contract did not represent the mutual intent of the parties.                                        p. 107

Where a written contract for the sale of a motor car purported to be a sale by the manufacturers of the car, while as a matter of fact, it was shown to have been the personal undertaking of the agent who signed the contract, it was: *Held,* that parol evidence might be given of terms and conditions different from those printed on the contract, which was in the form used when such sales were made by the manufacturers.    p. 107

Experience as a mechanic and skilled repairer of automobiles does not necessarily qualify a witness as an expert to prove their market value.                                        p. 110

The plaintiff, in an action for a breach of warranty of a thing sold to him, is entitled as damages to the difference between the value of the thing in the defective condition warranted against and the value it would have borne if it had been as represented.                                        p. 109

A motor truck was sold with the warranty that it was a first-class car, as good as new, in sound and first-class condition, and if not abused would last the plaintiff at least four years; in a suit for breach of warranty, it was: *Held,* that this assurance as to the serviceability of the truck for that period was not an executory contract, but a warranty, just as much as the

other warranties as to the truck's quality and condition; and a demurrer to the declaration on the ground of misjoinder of counts could not be sustained.                                   p. 105

In general, it should be left to the jury to determine whether representations made during a sale were intended and understood as warranties, or simply as selling arguments.         p. 105

A purchaser of goods is not barred of his right of action for a breach of warranty, because of his failure to give the notice of breach required by the Uniform Sales Act, Code, Article 83, section 70, where it is proved that the article sold was so often sent to the defendant's shop for repairs that he was fully apprised of its condition.                                   p. 111

*Decided June 22nd, 1916.*

Appeal from the Superior Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, STOCKBRIGE and CONSTABLE, JJ.

*Osborne I. Yellott* and *J. LeRoy Hopkins,* for the appellants.

*Wm. Edgar Byrd* and *Frank M. Merriken* (with whom was *Charles Lee Merrikin* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for $2,550 recovered by the appellee against the appellants in a suit for an alleged breach of warranty of a Seitz motor truck sold by the latter to the former in May, 1913. The regular market price of the truck was $3,600, but as the one in question had been used for demonstration purposes, a reduction of $350 was made for that reason, and the price paid by the

appellee was $3,250. It is averred in the declaration that the appellee bought the truck upon the warranty that it "was a first class car, was as good as new and was in sound and first class condition; and that if it was not abused but handled with care, it would last the plaintiff at least four years." The breaches charged were that the truck "was not a first class car, was not as good as new and was not in sound and first class condition, but was unsound and in bad condition and would not and could not be run or operated as an auto truck in sound and first class condition could and would be run, and that said truck did not last the plaintiff at least four years from date of its purchase although not abused, but handled with care." The evidence offered in the case was directed mainly to the question whether the truck was inherently defective in its design and construction, and whether the difficulties encountered in its use were due to that cause or to negligence in its operation. From the record it appears that the rulings we are to review were made in the disposition of a demurrer to the declaration, numerous objections to testimony, and various proposals for instructions to the jury.

The declaration contained the common counts and also a special count based upon the alleged breach of warranty. It is contended that the special count is bad for duplicity because it combines two distinct causes of action. The theory of this contention is that the assurance as to the serviceability of the truck for the period of four years was not a warranty, but at most an executory contractual undertaking, which could not properly be combined in one count with the warranties as to the truck's quality and condition. The case of *White Automobile Co.* v. *Dorsey,* 119 Md. 251, is cited to this proposition. In that case, however, the averment held objectionable, when made in combination with the breach of warranty declared on in the same count, was that the defendants failed to perform their agreement to keep the automobile sold by them to the plaintiff in satisfactory running order, without expense to him for one year from the date of

the purchase. This assumption of an affirmative contractual duty was essentially different from the representation here relied upon as to the time during which the motor truck was capable of rendering efficient service. The assurance to that effect was not an executory promise, but had reference to an existing quality or capacity, and was hence closely akin to the other representations with which it was joined. In our opinion the demurrer was properly overruled.

A fundamental theory of the defense was that the statements attributed to the vendors by the declaration were not shown to have been made as warranties or otherwise than as a mere expression of belief in the high quality and utility of the motor truck offered for sale. It is insisted that while the question as to whether the representations were intended and understood as warranties, or simply as selling arguments, should be determined from the circumstances of the case, and should ordinarily be left to the jury, as held in *Osgood* v. *Lewis*, 2 H. & G. 495, *Horner* v. *Parkhurst*, 71 Md. 116, and other cases, yet the issue should have been withdrawn from the jury in this instance because there was no legally sufficient evidence to show that the affirmations of the vendors in reference to the truck were made in the contractual sense of warranting its quality and durability.

The *Uniform Sales Act* (Code, Art. 83, sec. 33) provides as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchase the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty." The rule thus declared by statute has long been recognized and applied by this Court as a principle of the common law. *Osgood* v. *Lewis; White Automobile Co.* v. *Dorsey, supra; Greer* v. *Whalen*, 125 Md. 273. It is proven in this case that the representations alleged in the declaration did not purport to be statements of the sellers' opinion only, but were

affirmations of fact relating to the truck, which were designed, and naturally tended, to induce the plaintiff to purchase, and upon which he definitely relied in the transaction. The statement that the truck would last four years, with careful use, was not a mere prediction as to the length of its service, but was a representation as to its capability of being operated for that period. There was no denial or explanation by the defendants of the statements imputed to them in this connection, and there is nothing to alter their natural import or qualify their ordinary legal effect as warranties of condition and quality.

The offer of testimony as to the oral representations referred to was opposed on the ground that the contract for the purchase of the truck was in writing and could not be varied by parol evidence. When the sale had been agreed upon, the price and description of the truck were entered on an order blank of the Seitz Automobile and Transmission Company, which the plaintiff signed. The negotiations for the sale had been conducted by John P. Seitz, a member of the company just named, in conjunction with one of the defendants, who were its Baltimore sales agents. A payment of $350 on account was to be made at the time of the purchase, and as the plaintiff was about to draw his check for that amount, he was asked to make it payable to the defendants, and complied with the request. Eight days later a further payment of $1000 was made by a check likewise drawn to the defendants' order, the plaintiff being informed by Mr. Seitz, in the presence of one of the defendants, that the latter were the owners and vendors of the truck. The subsequent payments were made in the same manner. There was a printed provision in the order blank to the effect that the order was given subject to approval by the Seitz Company and when so approved, should constitute a valid contract. No such approval was endorsed on the order, and the proof tends to show that the company named in it as vendor had in fact no proprietary interest in the sale of the truck or in its proceeds.

It thus appears that the form of agreement embodied in the order blank signed by the plaintiff did not represent the mutual intent of the real parties to the sale. The plaintiff understood that he was buying the truck from the company which manufactured it, while the defendants, as the actual owners, were intending to make the sale on their own account. It was not until the second payment was made, about a week after the delivery of the car, that the minds of the parties met in the mutual understanding and agreement as to the vendors' identity. This is the situation which the testimony tends to prove and with which we must deal in disposing of the question as to the competency of the proffered evidence of the defendants' oral warranties. The ostensible agreement from which their representations are said to vary was not the real contract under which the sale was intended by both parties to be consummated. This fact was undoubtedly proper to be proven by parol. *Colonial Park Estates* v. *Massart*, 112 Md. 648; *Birely* v. *Dodson*, 107 Md. 229; *Southern Adv. Co.* v. *Metropole Co.*, 91 Md. 61. The printed guaranty in the order blank, which is said to supersede and render inadmissible the defendants' special affirmations, involved an undertaking by the Seitz Company to replace within a year at its factory any parts of its trucks which became broken or worn out by reason of defects in material or workmanship. This obligation was enforceable only against the company by which it was assumed. It was not appropriate in that form to contracts of sale to which the company was not a party. When, therefore, the defendants have been accepted at their own instance as the real vendors in the transaction, they are not in a position to assert that their independent oral warranties are beyond the scope of the *company's* guaranty as set forth in the printed form on which the terms of the sale were noted. This being the status of the case with respect to the question under consideration, it will not be necessary to determine whether the representations offered in evidence would have to be excluded if the form of order signed by the plaintiff had been ad-

dressed to the true owners and vendors and had contained guaranties by which they assumed to be bound.

The conclusion we have stated on the point just discussed disposes also of a contention that the suit should have been brought against the Seitz Company and that a verdict should have been directed for the defendants on that ground.

The proof in the case shows that the motor truck purchased by the plaintiff was intended for use in his lumber business and was placed in charge of one of his employees who was given a course of training for its operation by one of the defendants' mechanics. During the succeeding fifteen months there were frequent breakages in the machinery of the truck and about one-third of the time, as the plaintiff estimates, it was out of use and undergoing repairs. At the end of that period, according to the plaintiff's evidence, the car was worn out and incapable of further service. The defendants insist that this result was entirely due to neglect and mismanagement on the part of the plaintiff's driver, to whom the car had been completely entrusted. There is evidence in the record supporting this theory, but there is also testimony to the contrary. It was testified by the defendants' witnesses that the car was in first class condition when sold to the plaintiff and was constructed upon approved principles, and with reasonably careful use was capable of rendering satisfactory service for considerably more than four years. On the other hand the plaintiff offered testimony to the effect that the mechanism in the truck for the generation and transmission of the motive power was impractical and certain to wear itself out in the course of ordinary use in a very limited period of time. Exceptions to the admission of the latter testimony were reserved on the theory that the warranties relied upon had no reference to the structural *design* of the truck, and also that the witnesses who testified for the plaintiff on this subject were not properly qualified as experts to give the opinions they were allowed to express.

Upon the question as to the effect of the warranties it has already been pointed out that the affirmations of the defend-

ants related to the condition, quality and durability of the truck they were proposing to sell. The principle of the transmission equipment was explained to the plaintiff as a feature of special merit, but he was induced, as he says, to make the purchase by the assurance that the car was capable of serving his purposes for the period designated. It was not merely warranted to be a first class truck of that design, but the representation was that the car as constructed would be serviceable for at least four years if used with proper care. This is altogether different from warranties of standard grade and quality of staple articles as illustrated in the cases cited on this point, by the appellant, in the argument.

There were two witnesses who testified that the truck was inherently defective in the principle of its construction. Each of these witnesses had examined the car, and one had made repairs to it during the period when it was being used. Both were mechanics of considerable experience in the construction and repair of automobiles, and we think the evidence shows them to be sufficiently qualified to describe the mechanism of the plaintiff's car and to express an opinion that there were imperfections in its motor and transmission system which accounted for the frequent breakage and early wearing out of the machinery.

A more serious question arises from the admission over the defendants' objection of the opinion of one of the witnesses last referred to, that when the truck was sold to the plaintiff it was worth only $700. This was all the evidence offered by the plaintiff as to the value of the truck at the time of the sale, and the result showed that it was adopted by the jury as one of the decisive factors in their award of damages. They were correctly instructed that if they should find for the plaintiff, upon the theory of a breach of the warranty, the measure of damages would be the difference between the value of the truck in the defective condition warranted against and the value it would have borne if it had been as represented. *White Automobile Co.* v. *Dorsey,* 119 Md. 258, and cases there cited. *Uniform Sales Act,* Code,

Art. 83, sec. 90 (7). The verdict for the plaintiff was for
$2,550, being the exact difference between $700 and the price
of $3,250 for which the truck was bought. It is very im-
portant, therefore, to ascertain whether, in addition to being
a skilled automobile mechanic, the witness who testified as to
the worth of the plaintiff's car was qualified to make an ac-
curate estimate of its value. In describing the nature and
extent of his experience he said that he is an automobile
machinist and has been engaged in that line of work about
thirteen years. During that period he served at various
places in repairing and building automobiles, occasionally
holding the position of foreman in charge of such work. At
the time of the trial he was foreman of the shop of the
Security Storage and Trust Company of Baltimore, his duty
being to attend to the repairing and rebuilding of that com-
pany's motor trucks and touring cars. None of the establish-
ments with which he was connected were interested in the
manufacture, sale or repair of any cars having a transmis-
sion system like the one used in the Seitz motor trucks. He
was familiar with the cost and selling price of some of the
cars he helped to construct, and he had bought and sold two
second-hand automobiles, and has advised persons as to the
purchase of used cars at some of the places where he was
employed. It is not shown, however, that he had any expert
knowledge of motor car values generally, nor does it appear
that he had any experience whatever in reference to the sale
of Seitz cars that would enable him to estimate the value of
a demonstration car of that type. His opinion that the truck
in question was worth $700 at the time of the sale was given
without any reason or theory being asked for or offered to
explain or support such an estimate. If the truck was not
in fact capable of rendering the kind and length of service
warranted, the plaintiff is justly entitled to recover, but he
is required to produce satisfactory proof as to the amount of
the loss he has suffered from the breach of which he com-
plains. This obligation is not discharged by estimates of
value which do not rest upon adequate knowledge and com-

petent judgment. No such basis has been shown to exist for the only testimony offered by the plaintiff as to the important question of value upon which the measure of his recovery depends, and we must, therefore, hold that its admission was reversible error.

It was suggested in the argument that the plaintiff might be barred of his right of action by the provision of the *Uniform Sales Act,* Code, Art. 83, sec. 70, that "if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." This provision is not available to the defendants, because the proof is that the truck was repeatedly sent to their shop by the plaintiff for repairs, and that they were thus apprised of the difficulties he was having in its use and operation.

The record before us contains ten bills of exception relating to the evidence, one of which embraces one hundred motions to strike out testimony, and there is another bill of exceptions bringing up for review the action of the trial Court upon thirty-one prayers. It is, of course, not practicable for us in this opinion to pass upon these exceptions in detail, but they are all concerned with various phases of the questions we have discussed, and are governed generally by the principles we have stated and applied. No reversible error has been discovered in any of the rulings except the one admitting the estimate of value to which we have referred.

> *Judgment reversed, with costs and new trial awarded.*