## STUDEBAKER BROS. CO. OF UTAH v. ANDERSON et al.

No. 2975. Decided September 10, 1917. (167 Pac. 663.)

1. SALES—WARRANTY—LANGUAGE CONSTITUTING EXPRESS WARRANTY. Where defendant applied to plaintiff for an automobile for use for the special purpose of carrying people to and from his hotel and the depot, stating that he possessed no knowledge concerning an automobile and would rely on plaintiff's representations, and plaintiff's salesman represented that they had just such a car as defendant wanted, and stated that they guaranteed it to be in perfect condition to go on the road for such purpose, there was an express warranty that the car would run, though it was a second-hand car. (Page 325.)

2. SALES—RIGHT TO RESCIND—BREACH OF WARRANTY. Though on breach of warranty of an automobile the buyer might have sued for the difference between the value of the car in the condition warranted and its value in the condition in which it was sold, he might rescind instead and recover back the purchase price. (Page 326.)

3. SALES—RIGHT TO RESCIND—WAIVER. A buyer did not waive his right to rescind the purchase of an automobile for breach of warranty that it would run by repeatedly taking it back for adjustment and repairs, where nothing more was intended than to offer the seller ample opportunity to put the car in condition so that it would run. (Page 326.)

4. SALES—BREACH OF WARRANTY—RETURN OF GOODS—QUESTIONS FOR JURY. Where there was a sharp conflict in the evidence as to whether the buyer of an automobile in returning it to the seller left it for further repairs or whether he left it because it would not run and do the work for which it was warranted, this was a question for the jury. (Page 327.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by the Studebaker Bros. Company of Utah against William Anderson and another.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Marioneaux, Straup, Stott & Beck* for appellants.

*Boyd, DeVine & Eccles* and *Soren X. Christensen* for respondents.

### APPELLANT'S POINTS

Our contention is that no warranty of condition was ever pleaded or proved by the defendants. The allegations of the complaint are, and the testimony of Mr. Anderson is, that the plaintiff ''warranted and guaranteed the car to be as good as new and in perfect condition and fit for the use for the carrying of passengers to and from the New Grand Hotel at Salt Lake City, and in every way capable of doing the work for which it was intended.''

To say that a second-hand car is as good as new and in perfect condition and fit for carrying passengers, and capable of doing the work for which it was intended, is nothing but the expression of an opinion and does not amount to a warranty. (*Morley* v. *Consolidated Manufacturing Co.*, 81 N. E. 993; *Warren* v. *Walter Automobile Co.*, 50 Misc. (N. Y.) 605, 99 N. Y. Supp. 396; *Motor Company* v. *McKenna*, 138 N. Y. Sup. 491; *Motor Company* v. *Osborne*, 140 Ill. App. 633; *Smith* v. *Bolster*, 125 Pac. 1022; *Milwaukee Rice Machinery Co.* v. *Hancock*, 115 Wis. 422, (91 N. W. 1010); 28 Cyc., page 44.) If there had been a warranty of condition by the seller, the buyers' remedy would have been an action for damages to recover the difference between the value of the car in the condition warranted and its value in the condition in which it was.

''Where the article furnished by the seller is not such in kind, quality or condition as it was expressly or impliedly warranted to be, the direct and natural loss to the buyer who keeps it is obviously the difference between the value of an article of the kind he was entitled to receive, and the value

of the article which he has in fact received. For this loss he is entitled to compensation.'' (Mecham on Sales, Section 1817.)

''He is not entitled to return the property to the seller and rescind the agreement of sale.'' (Mecham on Sales, Section 1805.)

It is not necessary to cite any authority that if one has a right to rescind for breach of warranty of condition, he waives the right to rescind if, upon discovering the breach of warranty, he consents to the seller's repairing the property. Repairs or alterations under such circumstances is nothing less than making good the warranty. A purchaser who consents to the repair of the property impliedly assures the seller that if such repairs are made he will be satisfied. (*Gentilli* v. *Starace,* 30 N. E. 660, 14 N. Y. Sup. 764; *Aultman & Co.* v. *McKinney,* 26 S. W. Rep. 266; 35 Cyc., page 428; *Gaar-Scott & Co.* v. *Halverson,* 105 N. Y. 109; *Aultman Co.* v. *Donnell,* 60 Pac. Rep. 482.)

### RESPONDENTS' POINTS

In the case of *Milwaukee Company* v. *Hancock,* cited by counsel, the court held that the representation that it ''was as good as new in every point and particular'' is an assertion of a physical fact amounting to a warranty upon which the purchaser may rely. Even in the absence of an expressed warranty that it is fit for a particular purpose, if the buyer informs the seller that he is buying it for a particular purpose, there is an implied warranty, a breach of which will justify a decision. (35 Cyc. 399, Subdivision iii, and authorities cited.) Here, however, there was a direct affirmation that the automobile was suitable for a particular purpose, and it became an express warranty. (*Clark* v. *Johnston & Company,* 42 S. W. 844 [Ky.]; *Young* v. *Natta,* 88 S. W. 123 [Mo.]; *Conkling* v. *Standard Oil,* 116 N. W. 822 [Ia.].) The rule of law as to the sale of automobiles is not different from that relating to any other class of personal property. The general rule as to the remedies of a buyer on a breach is as follows:

"The remedy of the buyer for a breach of warranty in the sale of goods may be by a return of the goods, the contract being rescinded, and recovery of the price paid, by an action for damages or by a counter-claim or recoupment in an action by the seller for the price." (35 Cyc. 434 [Subdivision J].)

CORFMAN, J.

This was an action brought by the plaintiff in the district court of Salt Lake County to recover a balance due on a promissory note of the defendants given for the balance of the purchase price of an automobile. The complaint is in the usual form of an action upon a promissory note, alleging execution, delivery, and nonpayment on the part of the defendants and ownership of the note by the plaintiff. Briefly stated, the answer denies the execution and delivery of the note for a consideration; admits nonpayment; alleges that the note was obtained from the defendants by reason of fraud and deceit on the part of the plaintiff. For a further answer, and by way of counterclaim against the plaintiff, the answer affirmatively alleges that the plaintiff, on March 31, 1913, sold to the defendants a certain Garford automobile for $1,400, the defendants then paying $700 and giving their note for $700; that at the time of the sale plaintiff warranted and guaranteed the automobile to be good as new, in perfect condition, and fit for the use of carrying passengers to and from the New Grand Hotel at Salt Lake City, and in every way capable of doing the work for which it was intended; that on April 1, 1913, the automobile was delivered to and received by the defendants, they relying on the said representations of the plaintiff; that upon receipt of the automobile, and after attempting to use it in a proper and workmanlike manner, the defendants found the automobile to be out of repair and incapable of being operated; that the defendants thereupon returned the car to the plaintiff and demanded a refund of the $700 paid by the defendants on the purchase price. Defendants prayed for judgment against the plaintiff for $700, with interest, cancellation of the note, and costs of suit. The plaintiff's reply, in effect, was a denial of

all of the allegations of the counterclaim except that therein plaintiff admitted that the automobile was out of repair and alleged that it was returned to plaintiff for repairs and received by plaintiff for that purpose, and also alleged that the car was purchased by defendants as a second-hand automobile after they had tested it and concluded that it was a good bargain at $1,400 with the exception of making such repairs as might be necessary to put and keep it in such condition as the defendants desired to have it. Trial was to a jury, resulting in a verdict for the defendants, upon which judgment was entered in defendants' favor as prayed for in their counterclaim. Motion for a new trial was made by plaintiff. The same was denied. Plaintiff appeals.

Plaintiff assigns as errors: The rulings of the court in the admission and rejection of testimony over plaintiff's objections; the refusal of the plaintiff's requests for a directed verdict in favor of plaintiff, and the denial of plaintiff's motion for a new trial on the grounds that the verdict of the jury was contrary to law, the evidence, and the instructions of the court. However, as the case is presented here on brief and argument of counsel, but one question is involved, namely, Is the verdict of the jury, and the judgment entered thereon, contrary to law and the evidence?

It was pleaded in the counterclaim of defendants that at the time of the purchase of the automobile in question plaintiff "warranted and guaranteed the said car to be as good as new and * * * fit for the use of the carrying of passengers to and from the New Grand Hotel at Salt Lake City, and in every way capable for doing the work for which it was intended." William Anderson, one of the defendants and manager of the Grand Hotel Company, the other defendant, relative to the car being guaranteed, testified as follows:

"March, 1913, I called on the plaintiff for the purchase of a car. I met Mr. Duffin. He was salesman for the company. I told him I was looking to buy a hotel bus or carryall, something to convey people to and from the New Grand Hotel and the depot. Mr. Duffin says: 'We have exactly what you want. Here is a car just—the engine in this car has just been over-

hauled by ourselves, in their own shops, and we guarantee this car to be in perfect condition to go on the road just for such purposes as you want it.' And I told him there was no necessity for any demonstration as far as the engine was concerned, that the Studebaker's word was good enough for me, and I knew nothing about an engine anyway; I am not an expert with an automobile.''

Duffin, the plaintiff's salesman, testified concerning the sale:

''The first conversation with Mr. Anderson, he came in and wanted to know if we had a car that would suit his purpose for hauling passengers from the hotel to the depot and back. I told him we had just such a car on the floor, * * * I told him the car had been recently overhauled and was in good condition. * * * Car was in good condition to do this work. * * * I didn't say to him we guaranteed the car to be as good as new. Never mentioned guaranty to Mr. Anderson or his chauffeur.''

The evidence conclusively shows that immediately after the defendants purchased the car it would not run. It was taken back for repairs and adjustments at the plaintiff's place of business daily, and the plaintiff failed, after repeated efforts, to put it in condition so that it could be operated.

Further testimony was given by the defendant Anderson in regard to defendants returning the car to plaintiff:

''The car was finally taken back to the Studebakers. * * * I tendered the car back to Mr. Duffin, the man I bought the car from. * * * I did that when they refused to run it any more. * * * I said, 'Here is the car back, Mr. Duffin.' I says: 'It's no use for me to bother with this car any more. It won't run. * * * ' I said that to Mr. Duffin that day we brought the car back and refused to take it any more.''

Testimony was given by witnesses for the plaintiff tending to show that when the defendants last returned the car to the plaintiff it was left for further repairs to be made by the plaintiff; that it was repaired and put in running condition by plaintiff when the defendants refused to again receive it.

It is contended by plaintiff that the expressions made by its salesman concerning the condition of the car, and its fitness for use were merely opinions of the salesman and, as a matter of law, did not amount to a warranty; and, further, there is no implied warranty attending the sale of a second-hand or used automobile. Numerous cases are cited by plaintiff in support of plaintiff's contention. The cases cited by counsel and the case at bar can readily be distinguished. The mere fact that after the purchasers had received the cars and put them to use breakages occurred and evidence of wear were discovered rendering the cars unsatisfactory to the purchasers, those cases hold, was not a breach of warranty, express or implied. The case at bar presents an entirely different proposition. Here the defendants, according to the undisputed testimony, applied to the plaintiff for an automobile to use for a special purpose, ''something to carry people to and from the New Grand Hotel and depot.'' The plaintiff's salesman met the defendants' application by representing it had just such a car, ''We have exactly what you want. * * * We guarantee this car to be in perfect condition to go on the road for such purposes as you want it.'' We think from the foregoing statements made concerning the particular car in question something more was to be implied, as matter of law, than that the plaintiff could sell the defendants a junk pile for an automobile and then escape liability therefor by saying such statements were only ''seller's talk.'' It is quite apparent that defendants' intent and purpose was to purchase an automobile that would run and carry passengers. The plaintiff represented and guaranteed it was selling the defendants just such a car. The car purchased by defendants would not run. That is conceded. The plaintiff, after repeated efforts, failed to make it run so as to meet the requirements for which it was sold and the plaintiff warranted it. It appears from the evidence that the defendants relied implicitly on the representations of the plaintiff's salesman that the car was in first-class condition for use, and that it would be a serviceable car for the carrying of passengers. The plaintiff was advised by defendant Anderson that he possessed

326          SUPREME COURT OF UTAH          [Sept.

Studebaker Bros. Co. of Utah v. Anderson, 50 Utah 319

no knowledge concerning an automobile, and that he would rely on the representations of the plaintiff, as he expressed it, "Studebaker's word is good enough for me." So far as the record here shows there was nothing in the appearance of the car to show that it was otherwise than in perfect condition for service, or that it would not do the work the defendants expected to use the car for.

All the authorities recognize the right of the defendants to complain and have legal redress under such circumstances and conditions as attended the transaction between plaintiff and defendants. Whether the sale be of a new or a second-hand car the representations made by the plaintiff amount to no less than an express warranty. *Bouchet* v. *Oregon Motor Car Co.*, 78 Ore. 230, 152 Pac. 888; *White Automobile Co.* v. *Dorsey*, 119 Md. 251, 86 Atl. 617; *International Harvester Co.* v. *Bean*, 159 Ky. 842, 169 S. W. 549; *Investment Co.* v. *Flick*, 187 Mo. App. 528, 174 S. W. 189; *Clark* v. *Johnston & Co.*, (Ky.) 42 S. W. 844; *International Harvester Co.* v. *Lawyer* (Okl.) 155 Pac. 617.

It is next contended by plaintiff that if there was a breach of warranty on the part of plaintiff, the defendants' remedy was an action for damages to recover the difference between the value of the car in the condition warranted and the value in the condition in which it was sold. Undoubtedly the defendants had that remedy, but it was not the only remedy the defendants could invoke. As stated in 28 Cyc. 44:

"For a breach of warranty the vendee has the right to rescind the contract and recover back the purchase price, or he may retain the vehicle and hold the vendor for his damages." Berry, Law Automobiles, section 226; *White Automobile Co.* v. *Dorsey*, supra.

It is further contended by plaintiff that if the defendants returned the car to the plaintiff for repairs, it was implied, as a matter of law, that, upon proper repairs being made, the defendants would be satisfied with the car, and they thereby waived their right to rescind the contract of sale, citing in support of that doctrine, *Gentilli* v. *Starace*, 133 N. Y. 140, 30 N. E. 660; *Aultman & Co.* v. *McKinney* (Tex. Civ. App.) 26 S. W. 266; 35 Cyc. 428; *Garr-Scott & Co. v. Halver-*

*son,* 128 Iowa, 603, 105 N. W. 109; *Aultman & Co.* v. *Donnell,* 9 Kan. App. 813, 60 Pac. 482. It would serve no purpose to enter upon a discussion of these cases. The facts and circumstances held as constituting a waiver in the cases cited by plaintiff were very different from the case at bar. As it is stated in 35 Cyc. 428, cited in plaintiff's brief:

"Unless there is a definite condition to that effect, the buyer is not obliged, as a condition precedent to recover on the warranty, to allow the seller to remedy defects. * * * So too an unsuccessful effort to remedy the defects renders the seller liable on his warranty, and the buyer is not bound to allow him a second opportunity."

Again recurring to the testimony as disclosed by the record, James W. Duffin, plaintiff's witness and salesman who sold the car, testified that after the defendants received the car "it was brought back every day."

T. L. Davis, a witness for the plaintiff, and its employee for the purpose of operating cars, testified:

"Q. Well one of the great troubles of the car was you couldn't get it to do the work, wasn't it? A. That was the trouble. I tried to drive it up the hill going north past the police station and couldn't make it. I hadn't tried it up the hill before. This time I tried to make it go and it wouldn't go. Q. You reported back there was no use trying, you will have to have new parts? A. I didn't state the new parts. Q. What did you say? A. I said have to go to the shop; I didn't state as to new parts. Q. You just could not operate it, that was all? A. That was the whole thing."

At most the record shows the defendants intended nothing more by taking the car back to plaintiff so repeatedly for adjustments and repairs than to afford the plaintiff ample opportunity to put the car in condition so that it would run. This was not a waiver of defendants' legal right under their contract to hold the plaintiff to answer for selling them a worthless car. *Kloch* v. *Newbury,* 63 Wash. 153, 114 Pac. 1032.

Then again, the record shows there is a sharp conflict in the evidence as to whether or not the defendants in returning the car to plaintiff left it for further repairs. The defendant Anderson testified that he did not do so; that he left it because it would not run and do the work for which the

defendants had purchased it and the plaintiff had represented and guaranteed it would do. We think this and the other questions involved in this controversy were properly submitted to the jury under the instructions of the trial court.

The jury having found the issues against the plaintiff, the judgment of the district court should be affirmed. It is so ordered. Costs to respondents.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.