# FRANCIS R. WILSON *vs.* SCOTT KELSO.

*Verdicts; correction of; by jury.  Judgments; arrest of.  Prom-*
*issory notes; defenses under general issue; presumption in*
*favor of holder; fraud or defective title; effect of.*
*Demurrers; to proper plea sustained.  Joint*
*and several contract; remedy; choice*
*of; Code of Pub. Gen. Laws, Art.*
*50, sec. 2 (1904).  Evidence;*
*allegation  and  proof.*
*Agency; mere decla-*
*ration no proof.*

By an agreement of counsel the Court ordered the clerk to take
the verdict, the jury announced it thus, "verdict for plaintiff
and assess damages at the full amount"; the clerk refused to
receive this verdict and directed the jury to return and state
the amount of damages.  *Held,* that there was no objection to
the clerk's action; or to the jury voluntarily correcting an
informality in the verdict.                              p. 168

A Court will not arrest a judgment except for substantial errors
apparent on the face of the record.                     p. 168

On a suit on a promissory note the defense that the payee did
not endorse the note is available under the general issue.
                                                        p. 168

To sustain a demurrer to a proper plea is no ground for
reversal when the defense presented by the plea is equally as
available under the general issue.                      p. 168

When a contract is several as well as joint, the plaintiff is at
liberty to proceed against the parties jointly, or each sepa-
rately, though their interest be joint.                 p. 169

Where an obligation is joint and several, it may not be treated
as several as to some of the obligors and joint as to the rest;
the obligee has the choice between the two methods of pro-

ceeding, but he must resort to the one or the other, and can
not combine them.                                    p. 169

Under sec. 2 of Art. 50 of the Code of Public General Laws
(1904), not more than one suit on a joint and several bond,
etc., can be brought when the persons executing the same are
alive and reside in the same county.                 p. 169

In any litigated question the pleas must apprise the parties of
the special nature of the question to be tried.      p. 170

Evidence must correspond to the allegations.         p. 170

There is no variance unless there is a disagreement between the
allegations and proof in some manner which in point of law
is essential to the charge or claim                  p. 170

Where the holder of a joint and several promissory note elects
to sue one defendant separately, there is no variance in intro-
ducing the note as evidence, although the note shows there
were other joint and several makers whom the plaintiff might
have sued.                                           p. 170

Agency can not be proved by the mere declarations of the
party as to whom the agency is alleged.              p. 171

Every holder of a promissory note is deemed a *prima facie*
holder in due course; but where it is shown that the title of
any person who has negotiated the note is defective, the
burden is on the holder to prove that he or some person under
whom he claims acquired the title as a holder in due course,
acting in good faith, for value and before maturity, and wtih-
out any actual knowledge of any infirmity or defect in the
instrument.                                          p. 172

It is not reversible error to refuse a prayer when the prayer
has been fully covered by other prayers granted.     p. 173

*Decided February 24th, 1911.*

Appeal from the Circuit Court for Washington County
(KEEDY, J.).

The following are the prayers in the case:

*Plaintiff's 1st Prayer (as modified).*—The plaintiff by his
counsel prays the Court to instruct the jury that if they

find from the evidence in this case that on or about the 15th day of February, 1906, a certain H. P. Reynolds & Company sold to the defendants and others a certain German coach stallion at and for the sum of $3,000.00, and that said defendants and others gave three joint and several promissory notes for $1,000.00 each, payable to H. P. Reynolds & Company, or bearer, and shall further find that shortly after the giving of said notes, and before the maturity of the same, the said H. P. Reynolds & Company endorsed over and delivered the said promissory notes to the plaintiff in this cause, Scott Kelso, for a valuable consideration; and that the said Scott Kelso took said notes and paid the consideration therefor in good faith and without knowledge of any fraud or want of consideration in the obtention of same; that then the said plaintiff is entitled to recover, even though the jury shall further find as a fact that said notes were obtained by said H. P. Reynolds & Company, by fraud. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury find from the evidence that the plaintiff acquired the note in question for a valuable consideration before its maturity and that he acquired said note without knowledge that the same had been obtained by fraud or without consideration, then the jury must find that the plaintiff is a *bona fide* holder of said note for value, and merely suspicious circumstances sufficient to put a prudent man on inquiry, or even gross negligence on the part of the plaintiff at the time he acquired said note, are not sufficient for themselves to prevent a recovery by the plaintiff, unless the jury find from the evidence that in taking said note the plaintiff acted in bad faith. (*Rejected.*)

*Plaintiff's 3rd Prayer.*—The plaintiff by his counsel further prays the Court to instruct the jury that neither suspicion of defects in said note, or of fraud in its obtention, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the plaintiff is sufficient to charge said plain-

tiff with notice of any fraud or failure of consideration in said note. (*Granted.*)

*Plaintiff's 4th Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury that there is no evidence legally sufficient in this case to show that the said plaintiff had actual notice or knowledge of any fraud committed in the obtention of the note in question from the defendant, F. R. Wilson, before he purchased and paid for said note. (*Rejected.*)

*Defendant's 1st Prayer (as modified).*—The defendant by his attorneys prays the Court to instruct the jury that if they find from the evidence that H. P. Reynolds & Co. obtained the note sued on by fraud and that the plaintiff had actual knowledge of such fraud before he purchased and paid for the said note that then their verdict must be for the defendant. (*Granted.*)

*Defendant's 2nd Prayer (as modified).*—And further prays the Court to instruct the jury that if they find the note sued on was in fact obtained by H. P. Reynolds & Co. by fraud, that then the burden of proof is on the plaintiff, and it is incumbent on him to show that he acquired and paid for the same in good faith for value before maturity without actual knowledge of any infirmity or defect in the title of the persons negotiating it to the plaintiff. (*Granted.*)

*Defendant's 3rd Prayer (as modified).*—And further prays the Court to instruct the jury that if they find from the evidence that the note sued on was obtained from the signers of the notes by fraud and that the plaintiff had actual knowledge of such fraud, or had knowledge of such facts that his action in taking the note amounted to bad faith, that then their verdict must be for the defendant. (*Granted.*)

*Defendant's 4th Prayer (as modified).*—And further prays the Court to instruct the jury that if they find from the evidence that Reynolds & Co. obtained the note sued on or any signature thereto by fraud or other unlawful means or that they negotiated the same in breach of faith, and that the plaintiff had actual knowledge of any infirmity in the

same, or defect in the title of H. P. Reynolds and Co., before he paid for the same, that then the plaintiff is not entitled to recover, and their verdict must therefore be for the defendant. (*Granted.*)

*Defendant's 5th Prayer.*—The defendant further prays the Court to instruct the jury that they are at liberty to consider all the facts and circumstances given in evidence in this case in determining whether the plaintiff at the time he purchased the note sued on bought the same in good faith and without notice of fraud in obtaining the execution of said note. (*Granted.*)

*Defendant's 6th Prayer (as modified).*—If the jury believe from the evidence that the promissory note sued on in this case was obtained from the signers thereto by fraud, then the burden of proof is on the plaintiff to show that he became the holder of said note before it was overdue in good faith for value and without actual knowledge of any infirmity or defect in the title of persons negotiating it to the plaintiff, and unless the jury believe from the evidence that said note was thus acquired by the plaintiff, their verdict should be for the defendant. (*Granted.*)

*Defendant's 7th Prayer.*—The jury are instructed that in considering the question of notice it is not necessary that the plaintiff have knowledge or notice of any particular fraud, but that it is sufficient that the plaintiff have notice that there was fraud in the obtention of the note sued on by the payee therein from the makers thereof. (*Rejected.*)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas, Pattison and Urner, JJ.

*Ferdinand Williams* (with whom were *Wm. J. Witzenbacher* and *A. A. Wilson* on the brief), for the appellant.

*F. Brooks Whiting* and *Charles D. Wayaman*, for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee, Scott Kelso, recovered a judgment in the Circuit Court for Washington County for the sum of $1,146.33 against Francis R. Wilson, and from that judgment the defendant has brought this appeal.

The record presents three bills of exceptions. Two relate to the rulings of the Court upon questions of evidence, and the other to the rejection of the defendant's seventh prayer.

The Court sustained a demurrer to the defendant's fifth plea, and overruled a motion in arrest of judgment. The correctness of these rulings is also presented by the record.

The evidence shows that the defendant and twelve other persons executed a promissory note in the following words and figures:

"FLINTSTONE, MD., February 15, 1906.

$1000.00.

Two years after date for value received we, or either of us, promise to pay to H. P. Reynolds & Co., or bearer, One Thousand Dollars at the Second National Bank of Cumberland, Md., with interest at 6% *per annum,* interest payable annually."

H. P. Reynolds & Co., the payees named in the note, were horse dealers residing in Pennsylvania, and the note sued on was one of three joint and several promissory notes each for one thousand dollars given to Reynolds & Co. for a German coach stallion sold to the defendant and others.

The note was endorsed by H. P. Reynolds & Co., and delivered to the plaintiff, and was duly presented for payment and was dishonored. The makers refused to pay the note, and the plaintiff brought suit in the Circuit Court for Allegany county against the defendant and *ten* other makers of the note.

The case was removed to the Circuit Court for Washington County where trial was had, and the judgment recovered.

No mention is made of the motion in arrest of judgment in the brief of the appellant, nor was it adverted to in the oral argument of his counsel at the hearing in this Court. We think the motion was properly overruled.

The record shows that by an agreement of counsel the Court ordered the clerk to take the verdict. The jury announced a verdict in these words: "verdict for plaintiff and assess the damages at the full amount." The clerk refused to receive this verdict, and directed the jury to return to the jury room and state the amount of the damages. They then found their verdict for the plaintiff, and assessed the damages at $1,146.33. This verdict, which is in proper form, was received by the clerk and recorded.

The objection that the clerk had no power to order the jury to correct the form of the verdict is without merit. They did voluntarily correct the form of the verdict, and the objection complained of is merely the correction of an informality.

The Court will not arrest a judgment, except for substantial error apparent upon the face of the record. The correction which the jury made was one which they had a perfect right to make under the circumstances stated.

The plaintiff before the trial entered a *non pros* as to the other *ten* defendants, and the case was tried against the appellant as the sole defendant. He pleaded the general issue pleas, and four special pleas setting up fraud in the procuring of the note by Reynolds & Co., and notice of fraud by the plaintiff before he purchased or paid for the note. The case was tried upon issues joined upon the general issue pleas, and upon issues properly framed upon replications to the special pleas.

We find no reversible error in sustaining the demurrer to the defendant's fifth plea, which alleged that the payees did not endorse the note to the plaintiff, and that the signature on the back of the note was not the signature of Reynolds & Co., nor made by their authority.

This defense was available to the defendant under the general issue pleas, and, therefore, no injury was done by the ruling on the demurrer. There is not a particle of evidence in the record tending to support the allegation of this plea, and there seems to be no doubt that the note was

properly indorsed by Reynolds & Co., as alleged in the declaration.

The plaintiff was called as a witness in his own behalf, and was shown the note sued on. He testified that he was the holder of the note, and that it had not been paid. The note was then offered and admitted in evidence over the objection of the defendant, and this ruling constitutes the first exception.

Where the obligation is joint and several, an ancient and familiar rule of law forbids it to be treated as several as to some of the obligors, and joint as to the rest. The obligee has the right of choice between the two methods of proceeding; but must resort to one or the other exclusively, and can not combine both. He must proceed either severally against each, or jointly against all. When the contract is several as well as joint, the plaintiffs at liberty to proceed against the parties jointly, or each separately though their interest be joint. 1 *Chitty Pl.* 143; *Merrick* v. *Bank of Metropolis,* 8 Gill, 74; *Poe Pleading,* 2 Ed. section 382.

This rule has been somewhat modified by *section* 2, *Article* 50, *Code* 1904, which provides that "No person shall institute more than one suit on a joint and several bond, promissory note, penal or single bill, when the persons executing the same are alive and reside in the same county; and if more suits than one be instituted on any such bond, promissory note, penal or single bill, judgments of *non pros* shall be entered against the plaintiff in such suits."

The plaintiff by dismissing the suit as to all the other defendants elected, as he had a right to do, to pursue his remedy on the note against the defendant alone, and the best evidence of the defendant's liability on the note was the note itself, which by the pleadings he admitted that he had signed.

The plaintiff, being the holder of the note, must be treated *prima facie* as a holder in due course, and, therefore, entitled to recover.

The objection to the introduction of the note in evidence is that it discloses a variance between the allegation and the proof. In every litigated question the pleadings must apprise the parties of the specific nature of the questions to be tried, and as this object would be defeated if either party were at liberty to prove facts essentially different from that alleged on the record as constituting the claim on the one hand, and the defense on the other, hence the necessity of the general rule that the evidence must correspond to the allegations, and that the Court must decide *secundum allegata et probala;* but there can be no variance unless there be a disagreement between the allegation and the proof in some matter which, in point of law, is essential to the charge or claim.

As the plaintiff elected to hold the defendant separately liable, and as the note was evidence of that liability, there was no variance, notwithstanding the fact that the note when produced showed that there were other joint and several makers whom the plaintiff might have sued. To hold otherwise would be to tell the holder of such an instrument as the one sued on that he is at liberty to sue any one of the makers separately, and then deprive him of the power to prove his case by the application of the rule of evidence mentioned.

The second exception was taken during the course of the examination of James A. Ash, a witness for the defendant. This witness gave evidence of certain conversations and transactions between himself and a man named Harman respecting a sale of a horse, and it was proposed to prove "that Harman told witness that the reason Harman came to witness was that Mr. Kelso recommended witness." This was objected to by the plaintiff.

The Court ruled that it would admit this in evidence if the defendant would follow it up by testimony to show that Harman was there representing the plaintiff. Ash then testified that Harman had asked witness to take him out and introduce him to several farmers; that witness was at two

places where a sale was made; that Harman wanted to sell a share to witness, but witness did not buy; that finally Harman said to witness that there was a share to give away, and that he would give his share to witness; that Harman said he would give witness a check for two hundred dollars when witness signed the note; that he did give witness check when he signed the note, and that witness got the money for it; that the check was either signed H. P. Reynolds or H. P. Reynolds & Co.

Counsel for plaintiff moved the Court to strike out the testimony of Ash, quoted above, to the effect that Harman told him that Kelso had recommended him to the witness, and that was the reason he had come. Whereupon the defendant offered to prove "that Harman told witness that if he would take a share of two hundred dollars in the horse mentioned in evidence, he would give him a check for two hundred dollars, and did give him a check for two hundred dollare, for which he (Ash) got the money, and then offered to prove by said James A. Ash that at the time of this transaction Harman told said witness that the plaintiff (Kelso) had sent him there to sell the horse, and proffered to follow it up by the evidence of Mr. Hendershot that the plaintiff (Kelso) told him (Hendershot) that he (Kelso) had given two hundred dollars to Ash to effect the sale."

The Court struck out the testimony objected to, to wit, "that Harman told witness that the reason Harman came to witness was that Mr. Kelso recommended him."

This ruling constitutes the second exception.

The testimony stricken out was clearly inadmissible unless it was shown that Harman was an agent of Kelso. This agency could not be shown by the mere declarations of Harman.

In *National Mechanics Bank of Baltimore* v. *National Bank of Baltimore,* 36 Md. 20, the Court said: "Declarations of a broker or agent are not *per se* evidence of agency; but when evidence of facts *in pais* tending to show the relation of principal and agent existing has been offered directly

or circumstantially, it is then the province of the jury to determine whether there is such proof of agency as to make the declarations of the supposed agent binding on the principal. * * * In *Rosenstock* v. *Tormey,* 36 Md. 182, this Court alluding to the practice of allowing parties to introduce evidence which was irrelevant *per se,* by assurance of counsel it would be followed up by evidence that would make it relevant, remarked: "We are not aware of any decision that has applied the rule to the case where declarations or acts of agents are offered for the purpose of binding principals. On the contrary, it is plainly said in *Marshall* v. *Haney,* 4 Md. 511, that the declarations of an agent are not admissible to bind the principal under any circumstances until the agency is first clearly established, and the language of the Court in *Atwell* v. *Miller,* 11 Md. 359, is to the same effect."

There was no proof to show that Harman was the agent of the plaintiff and the testimony was properly stricken out. Furthermore, Mr. Hendershot, who was subsequently called by the plaintiff, did not support the offer made with respect to the testimony stricken out. We find no error in this ruling.

This brings us to the consideration of the action of the Court in rejecting the defendant's seventh prayer, which was as follows: "The jury are instructed that in considering the question of notice it is not necessary that the plaintiff have knowledge or notice of any particular fraud, but that it is sufficient that the plaintiff have notice that there was fraud in the obtention of the note sued on by the payee therein from the makers thereof." Every holder of a negotiable promissory note is deemed a *prima facie* holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. (*Code Article* 13, *section* 78.

In *Cover* v. *Myers,* 75 Md. 419, the Court said: "Where a negotiable instrument is originally infected with fraud, invalidity, or illegality the title of the original holder being destroyed, the title of every subsequent holder which reposes on that foundation, *and on no other,* falls with it. But if any subsequent holder takes the instrument in good faith, and for value, before maturity, he is entitled to recover on it;" and *section* 75, *Article* 13, *of the Code* provides that "to constitute notice of an infirmity in an instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The defendant offered evidence tending to show that the signature of some of the makers of the note were obtained by the fraud of H. P. Reynolds & Co. It was then incumbent upon the plaintiff to show that he took the note in good faith, for value, and before maturity, and without any actual knowledge of any infirmity or defect in the instrument. He offered evidence tending to show that he took the note under these circumstances, and the jury, under the instructions of the Court, accepted as true his evidence on these points. The Court granted six prayers on behalf of the defendant. An inspection of these prayers, which will be set out in the report of the case, will show that the case of the defendant was submitted to the jury as favorably and as fairly as he had a right to expect upon all the issues raised by the pleadings.

The question of notice presented by the defendant's seventh prayer was fully covered by the granted prayers of the defendant, particularly by the fifth prayer, in which the jury were told that they were at liberty "to consider all the facts and circumstances given in evidence in this case in determining whether the plaintiff at the time he purchased the note sued on bought the same in good faith and without notice of fraud in obtaining the execution of said note."

Finding no reversible error in any of the rulings, the judgment will be affirmed.

> *Judgment affirmed, with costs to the appellee.*