# THE TRUSTEES OF AITZ CHAIM HEBREW CONGREGATION ET AL.

## *vs.*

## GEORGE T. BUTTERHOFF.

*Breach of Contract—Loss of Profits—Evidence—Instructions.*

In an action for breach of a contract by which plaintiff was to do certain grading and paving work for defendants, the contract having been put in evidence, and evidence having been given that defendants had refused payment of the amount shown by the supervising engineer's certificate to be due plaintiff, and that he had been told by defendants' representative not to complete the work, and to remove from their premises the property that he was using in doing it, and he having testified in detail as to the value of the work and material furnished by him up to that time, evidence as to what it would have cost him to complete the work under the contract was admissible to show the profit which he would have made had he been allowed to complete the work.          pp. 273-275

Under Acts 1914, ch. 378 (Code, vol. 3, art. 75, sec. 24, subsec. 107), providing that when the cause of action filed with the declaration shall set forth the plaintiff's claim with the particularity required for a bill of particulars, the said cause of action shall be treated as one of the pleadings, and the plaintiff shall be restricted in his evidence to proof of the items so set out, if an account, filed with the declaration, and set out with the particularity of a bill of particulars, contains no item of loss of profit, plaintiff cannot recover such profit.

pp. 276, 277

Where the verdict in favor of plaintiff was for over three hundred dollars more than the amount which plaintiff testified was due him by defendant, exclusive of the loss of profit by reason of defendant's breach of the contract in suit, it cannot be contended that evidence as to loss of profit was not considered by the jury, and that consequently error in admitting such evidence was harmless.          p. 277

It is only when it is conclusively shown that wrongfully admitted evidence was not considered by the jury in reaching its verdict that the court should so hold.          p. 278

A prayer that by the true construction of the contract it was defendants' duty to pay a certain certificate of the engineer as to work done by plaintiff, and that if defendants failed and refused to pay said certificate, this was a breach of the contract, unless said certificate was procured by fraud, or issued by the engineer without inspecting the work, was inconsistent and misleading, since if the breach of the contract was dependent upon the want of fraud, there could be no duty imposed on defendants to pay the certificate without a like qualification.

p. 278

A provision in a contract for construction work, by which the certificate of the supervising engineer as to the value of the work done by the contractor during stated periods is made final and conclusive, is valid and effective, in the absence of fraud or bad faith.          p. 279

In an action by a contractor to recover the money due him under a certificate of the supervising engineer, which certificate was by the contract made conclusive on the parties in the absence of fraud, the burden was not upon plaintiff of showing the absence of fraud.          p. 279

In an action by a contractor to recover under a contract for grading and paving work, it was proper to instruct the jury that if their verdict was for plaintiff, he was entitled to recover the reasonable value of the work done and materials furnished and also such profit, if any, as the plaintiff would have made had he completed the contract, less such sum as the jury may

p. 279

*Decided June 21st, 1922.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

Action by George T. Butterhoff, to the use of John B. Marr, against the Trustees of Aitz Chaim Hebrew Congregation of Baltimore, and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

The prayers offered were as follows:

*Plaintiff's First Prayer.*—That by the true construction of the contract offered in evidence it was the duty of the defendants to pay the certificate dated 20th day of August, 1920, issued by Edward V. Coonan & Co., and if the jury find that the defendants failed and refused to pay said certificate, then it was a breach of the contract on the part of the defendants, unless the jury find that said certificate was procured by fraud, or issued by the engineer without any inspection of the work for which the certificate was given.

*Plaintiff's Second Prayer.*—The court instructs the jury that if their verdict be for the plaintiff, then the plaintiff is entitled to recover the reasonable value of the work done and materials furnished, if the jury so find, and also such profit, if any, as the jury may find the plaintiff would have made if he had completed the contract offered in evidence less such sums as the jury may find the defendants paid to the plaintiff on account thereof.

*Defendants' First Prayer.*—The defendants pray the court to instruct the jury that if they find from the evidence that the plaintiff failed to perform his part of the contract in accordance with the terms and specifications mentioned therein and as a result of such failure the defendants were compelled to get the plaintiff's contract completed and that the defendants were compelled to pay $10,000 to complete the plaintiff's contract, then if the jury so find, the plaintiff is not entitled to recover in this action and the verdict of the jury should be for the defendants.

*Defendants' Second Prayer.*—The defendants pray the court to instruct the jury that if they shall find from the evidence that the plaintiff, Butterhoff, violated the terms and provisions contained in the said contract, plans and specifications in performing a part of the work called for therein, that is, if the jury shall find that the said work was not done in a good workmanlike manner and if they shall further

find that the said plaintiff refused to complete the work required of him under his contract with the defendants in a good and workmanlike manner then their verdict must be for the defendants.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Howard Bryant* and *Sidney R. Traub,* for the appellants.

*J. Royall Tippett,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against the appellants in the Superior Court of Baltimore City.

The appellants, owners of a cemetery in Baltimore County, in March, 1920, entered into a written agreement with the appellee, by which the latter was to do certain work therein, consisting of grading, and paving with concrete, certain roads or roadways, more particularly mentioned and described in the plans and specifications, which were made part of the contract.

It was provided in the agreement that the appellee, the contractor, was, at his own cost and expense, to do all the work and furnish all the labor and material necessary, at and for the sum of ten thousand dollars.

The work was to be done under the supervision of Edward V. Coonan & Company, civil engineers, and in the contract is found the provision that

> "It is agreed that the owners shall pay the contractor every other week during the continuance of the work 75 per cent. of the value of the work done during the two weeks, and that said value shall be determined by said engineers, and upon receiving a certificate stating the said value, the owners will immediately pay the contractor the amount of said value, as stated in said certificate."

It was provided in the specifications, in respect to the power and authority of the engineer,

"that the engineer shall in all cases determine the amount, quality and acceptability of the work to be done under this contract, shall decide all questions relating to the performance of said work," and his "estimate and decision in all matters relating to the contract shall be final and conclusive, and a condition precedent to the right of the contractor to receive any moneys under the contract."

The work was to commence ten days after the execution of the contract, but it seems that nothing was done earlier than June following, when the work was started, and thereafter, during the progress of the work, the contractor was paid thereon twenty-three hundred dollars, two hundred dollars about the time that the work was commenced, and the balance in four payments, as follows: three hundred dollars on July 1st; three hundred dollars on July 9th; eight hundred dollars on July 23rd, and six hundred dollars on July 30th.

On August 20th thereafter, the appellee called upon and obtained from Edward V. Coonan & Company, engineers, the following certificate:

"Baltimore, Aug. 20th, 1920.
"Fifth Estimate of Work for George T. Butterhoff.
"Mr. Samuel Phillips, representing the different Congregations owning the Cemetery near Lansdowne.
"Please pay to Mr. Butterhoff, Contractor, the sum of $500.00 on account of work done at said Cemetery.

"Very respectfully,

"Edward V. Coonan & Co.,
"Engineers.

"First estimate,     $300.
"Second estimate,    $300.
"Third estimate,     $800.
"Fourth estimate,    $600."

The payment of the two hundred dollars, unlike the other payments, was not made upon the certificate of the engineers, but by check of Samuel Phillips, treasurer of the appellants, to purchase a pump needed by the appellee, Butterhoff, in the work to be done under the contract.

After receiving the certificate for five hundred dollars, Butterhoff presented it to Phillips for payment, but it was not paid, and this suit was thereafter instituted.

The declaration contains six of the common counts and two special counts.

Pleas were filed to each and all of these counts, but no demurrer was filed to any of them, and after further pleading, issues were joined.

In the trial of the case below, four exceptions were taken. Three of them relate to the evidence and one to the prayers.

The plaintiff testified that when he called on Phillips, treasurer of the appellants, he was told that he had no money that day, and when Butterhoff told him that he would have "to have money to keep the work going," Phillips said, "Maybe I will have some money next week," and he went back to work for another week. At the end of that week, he again went with the certificate to Phillips to obtain the money on it. He was again told by Phillips that he had no money. Afterwards he saw Mr. Traub, chairman of the cemetery committee, acting for all the appellant companies, which had made the contract with the appellee, and told him that if the certificate was paid he would continue the work, to which Mr. Traub replied, "We do not want you on the job under no circumstances. I want you to send out there and get your stuff away from there;" and thereafter Butterhoff did no work on the contract.

Butterhoff then testified in detail as to the amount of material furnished and work done by him, the value of which amounted to $3,331.82. He was then asked, "Now, the contract price, Mr. Butterhoff, as called for by this plaintiff's exhibit No. 1, is $10,000. I want you to tell his Honor and

the jury how much it would have cost to have completed the contract at the time you got off the job?" . There was an objection to this question and, upon its being overruled by the court, the first exception was taken. The answer to the question was, "Well, it would cost me about $8,000. The whole job, you mean? No, sir. You have testified that the work you did up to the time you got off the job was worth $3,331.82. I want you to tell his Honor and the jury how much it would have cost you to have completed the work from that point on to the end?" This question was likewise objected to, and it being overruled, the second exception was taken. The answer to that question was, "Well, around about $5,000," and there being an objection to the answer, it was overruled, and the third exception was taken.

The object and purpose of this testimony, as it may be readily seen, was to ascertain the profit that the appellee would have made had he been permitted to have completed the work begun by him under the contract.

In discussing the question when profits are an element of damages, it is said in 8 *R. C. L.*, page 501, that, "Lost profits are a proper element of damage * * * where, in cases involving a breach of contract, the loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation, and where * * * such profits can be shown with a reasonable degree of certainty. Subject to these principles a recovery may be had for the loss of profits which would have been realized had the contract been complied with."

Later on in the same work, on page 505, it is said, "Where the profit to be made was the inducement to the contract, such profit is the measure of damages. So a recovery may be had for the loss of profits which are the direct and immediate fruits of the contract itself. Such profits are not to be regarded as consequential, remote, or speculative in character, but are regarded as part and parcel of the contract itself, entering into and constituting a portion of its very elements."

In the case of *Black* v. *Woodrow & Richardson,* 39 Md. 194, where the plaintiffs had agreed with the defendant to build for him a house for a certain price, and upon which they started their work, but were stopped in doing so by the defendant, as claimed by the plaintiffs, this Court, speaking through JUDGE ALVEY, said, "In the case before us, according to the averments of the declaration, the appellees (plaintiffs below) were notified and directed by the appellant to desist from the further prosecution of the work contracted to be done by them, and were thus prevented from performing their part of the contract; and though the appellant had a right thus to stop the work on the building, yet, by so doing, he committed a breach of the contract, and thereby incurred a liability to pay the damages that might result therefrom. And the damages in such case would include compensation for the labor done and materials furnished, *and such further sum in damages as might, upon legal principles, be assessed for the breach of the contract."*

In support of the principles thus laid down, this Court cited the case of *Phila., W. & B. R. R. Co.* v. *Howard,* 13 How. 307, 344. In that case the appellee had agreed with the appellant company to do certain excavation and other work upon its road, but, as claimed by the appellee, he was wrongfully prevented from completing the work that was to be done by him under the contract.

The United States Supreme Court in that case said: "In case of a contract like this, that loss is, among other things, the difference between the cost of doing the work and the price to be paid for it. This difference is the inducement and real consideration which causes the contractor to enter into the contract. For this he expends his time, exerts his skill, uses his capital, and assumes the risks which attend the enterprise. And to deprive him of it, when the other party has broken the contract and unlawfully put an end to the work, would be unjust. There is no rule of law which requires us to inflict this injustice. Wherever profits

are spoken of as not a subject of damages, it will be found that something contingent upon future bargains, or speculations, or states of the market, are referred to, and not the difference between the agreed price or something contracted for and its ascertainable value, or cost. We hold it to be a clear rule, that the gain or profit, of which the contractor was deprived, by the refusal of the company to allow him to proceed with, and complete the work, was a proper subject of damages."

At the time this evidence was offered, there had been put in evidence the contract showing the terms and conditions under which the work was to be done, and the price to be paid therefor; that the appellants had refused payment of the amount shown by the engineers' certificate to be owing to the appellee, and that he had been told by those representing the appellants not to complete his work, and to remove from their premises the property that he was using in doing the work required of him under the contract. The appellee had also testified in detail as to the value of the work and material furnished to such time upon the job.

With this in, the evidence admitted under the exceptions was, we think, admissible for the object and purpose for which it was offered, if not inadmissible for other reasons.

This suit was brought by the appellee against the appellant under what is commonly known as The Baltimore City Rule Day Act (chapter 184 of the Acts of 1886, as amended by chapter 173 of the Acts of 1894).

Attached to or filed with the *narr.* was an account, the cause of action in the case, which reads as follows:

To Work Done on Hebrew Cemetery on Washington
    Road, near Lansdowne, Md.:

Cement road finished, 356 sq. yd. at $2.25
    per yd. ............................. $801.00
Grading, 3,685 sq. yd. at 25c. per yd........ 921.55
75 ft. of 12-in. pipe, at $1.65 lin. ft......... 123.75
615 ft. of 10-in. pipe at $1.55 lin. ft........ 953.25
6 inlets at $15.00 apiece.................. 90.00

20 ft. of 5-ft. concrete pipe, at $9.00 lin. ft..    180.00
29 cubic yards concrete, at $15.50 cu. yd....    449.50

                                                   $3,519.05
Cash paid on account.................... 2,000.00

Balance due .........................$1,519.05

It is contended by the appellants that as the above account contains no item for loss of profit to the appellee, caused by the appellants' breach of the contract, he could not, under the statute (Code, art. 75, sec. 24, sub-sec. 107), recover such profit in these proceedings.

The statute referred to (Acts of 1914, chapter 378), reads as follows: "Either party may use the common law forms or the forms hereinbefore given, at his election; and either party may require a bill of particulars where the pleading is so general as not to give sufficient notice to the opposite party of the evidence to be offered in support of it; provided that in all jurisdictions where provisions has been or shall be made for the obtention of speedy judgments, when the cause of action, filed with the declaration, shall set forth the plaintiff's claim with the particularity required for a bill of particulars, the said cause of action shall become and be taken and treated as one of the pleadings in the case, and the plaintiff shall be restricted in his evidence to proof of the items so set out."

In *Newbold* v. *Green,* 122 Md. 648, where the opinion of this Court, prepared by JUDGE STOCKBRIDGE, was delivered February 18th, 1914, prior to the passage of the last mentioned act, approved April 10th, 1914, a detailed account was filed with the declaration, as in this case, and we there said, quoting from *Williar* v. *Nagle,* 109 Md. 75, "the plaintiff is not confined to the cause of action originally filed with the declaration."

The Court then proceeded to say, "it cannot be regarded as other than unfortunate that when an account, as complete

as the one in this case, is attached to the *narr.*, it should not be a sufficient statement of a plaintiff's claim, and confine the plaintiff in his proof to the item so set out; but the remedy for this must be found in legislative modification of the present law, rather than in a judicial wrenching of clearly established principles."

It was probably due to this suggestion of the Court that the act was passed by which the plaintiff's claim, filed with the declaration, when set forth, "with the particularity required for a bill of particulars," becomes and must be taken and treated as one of the pleadings in the case, and the plaintiff restricted in his evidence to the proof of the items so set out.

We cannot in this case escape the conclusion that under the statute mentioned, this evidence was inadmissible. The account, set out with the particularity of a bill of particulars, in effect became a bill of particulars, and like a bill of particulars, the plaintiff was, under the statute, restricted in his evidence to the proof of the items therein set out. *Scott v. Leary,* 34 Md. 389; *Cairnes v. Pelton,* 103 Md. 44; *Noel Construction Co. v. Armored Construction Co.,* 120 Md. 250.

It is stated in the brief of the appellee that if the evidence ruled upon should not have been admitted, the error in admitting it was a harmless one, as it is shown by the verdict of the jury that such evidence was not considered by it in reaching its verdict.

In this we cannot agree with the appellee. By the testimony of the plaintiff himself, the value of the material furnished and work done by him amounted in value only to $3,331.82, and he had been paid thereon the sum of $2,000, leaving a balance owing him of $1,031.82. The verdict of the jury was for $1,364, over three hundred dollars more than the amount he testified was owing him, exclusive of the loss of profit, and consequently we cannot say that the claim for profit was excluded from the consideration of the jury in reaching a verdict for a much larger sum.

It is true they could have allowed him interest on the amount found by them to be owing to the appellee, but if they did so, it could not have augmented the amount shown by his own testimony to be owing him, to the amount of the verdict; and it is only when it is *conclusively shown* that wrongfully admitted evidence was not considered by the jury in reaching its verdict that the court should so hold.

Having disposed of the exceptions to the evidence, we will now consider the rulings upon the prayers. The plaintiff and the defendants each offered two prayers. Both of plaintiff's prayers were granted, while the first prayer of the defendants was rejected and their second granted.

The jury were told by the plaintiff's first prayer, "that by the true construction of the contract, offered in evidence, it was the duty of the defendants to pay the certificate, dated the 20th day of August, 1920, issued by Edward V. Coonan & Company, and if the jury find that the defendants failed and refused to pay said certificate, then it was a breach of the contract on the part of the defendants, unless the jury find that said certificate was procured by fraud, or issued by the engineer without any inspection of the work for which the certificate was given."

The first clause of this prayer makes it the duty of the defendants to pay the certificate issued by the engineers, without regard to the question of fraud in the procurement of it, while by the latter clause, it is stated that there was no breach of the contract or failure of duty on the part of the defendants in not paying said certificate, unless fraud was found in the procurement of it. This prayer, to us, is inconsistent and misleading. If the breach of the contract was dependent upon a want of fraud, then there could have been no duty imposed upon the defendants to pay the certificate without a like qualification. This prayer, we think, should not have been granted.

It was conceded by the appellants in their brief that the decision of the engineer, under the terms of the contract

was final and conclusive upon the parties to the contract in the absence of fraud and bad faith, and this view of the appellants, we think, is supported by the decisions of this State.

In the case of *Baltimore* v. *Poe,* 132 Md. 637, in which the contract therein contained a provision similar to the one found in this case, this Court said, speaking through JUDGE CONSTABLE: "At this date it cannot be questioned what is the effect of a provision in a contract expressly leaving to a third party the determination of questions such as were left in these contracts to the determination of the engineer and the architect. The rulings of this State and the courts of all other states in the Union, with the exception of Indiana, are uniform, as to the effect of such a provision as in these contracts; that the decision of such person shall be final and conclusive upon parties to the contract, provided the decision concerns matters within the scope of the submission, and is not subject to review by the courts, if made by the third party in the absence of fraud or bad faith. *M. & C. C.* v. *Ault,* 126 Md. 423; *M. & C. C.* v. *Talbott,* 120 Md. 363; *Hughes* v. *Model Stoker Co.,* 124 Md. 289; *Pope* v. *King,* 108 Md. 37; *Lynn* v. *B. & O. R. R. Co.,* 60 Md. 414; 6 *Cyc.* 40." But it seems the appellants' objection to this prayer was that the absence of fraud was not shown and that it was upon the plaintiff to show such want of it. This burden, we think, was not upon the plaintiff.

The plaintiff's second prayer correctly states the law applicable to cases of this character, because of the reasons heretofore stated in discussing the exceptions to the testimony, and we find no error in the action of the court in refusing the defendants' first prayer.

Because of the errors we have pointed out in the rulings of the court below, the judgment will be reversed.

*Judgment reversed and a new trial awarded,
with costs to the appellants.*