CHALLENGE CLOTHES CORPORATION *v.*
NATHAN POLSKI

[No. 46, January Term, 1943.]

*Decided April 8, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Jacob Kartman* for the appellant.

*George W. Della III,* with whom was *Webster C. Tall* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Nathan Polski instituted suit in the Baltimore City Court against Challenge Clothes Corporation, alleging that the defendant had employed him as a salesman in its store on South Conkling Street in Baltimore, and had failed to pay him his salary. He filed with his declaration a sworn statement claiming salary from November 2, 1940, to October 4, 1941, at $25 per week, $1,200; from December 29, 1941, to April 4, 1942, at $10 per week, $140; from April 5, 1942, to May 16, 1942, at $15 per week, $90; total, $1,450.

A similar suit was instituted against the corporation by Joseph J. Popp in the Court of Common Please of Baltimore City, alleging that the defendant had employed him as cashier and salesman at a salary of $40 per week, and had paid him only $20 per week. He filed a sworn statement claiming salary from the week ending November 9, 1940, to the week ending May 23, 1942, eighty-one weeks at $20 per week; total, $1,620.

The cases were tried together in the Baltimore City Court without a jury. The plaintiffs testified that their cash salaries had been paid in full, but that they had also been promised capital stock in the corporation. Neither of the plaintiffs had any previous experience in the clothing business. Polski, a laundry truck driver, volunteered as a friend to help in the store in the evenings and on Saturdays. He testified that soon afterwards he was promised $25 worth of stock per week, beginning November 2, 1940. He was paid $15 per week from October 11, 1941, to December 29, 1941, and in that year was also given a Christmas bonus of $100. He continued to receive a salary of $15 from December 29, 1941, to April 4, 1942, but he claimed he was promised $10 worth of stock per week during that period. From April 5,

1942, until his discharge on May 16, 1942, he received a salary of $20, and he swore that he was promised $15 worth of stock per week during that period. He claimed a total of $1,450 worth of stock. Popp admitted that he was paid his cash salary in full until May 23, 1942, when he was discharged. He admitted that his salary had been raised in January, 1942, to $30, and in February, 1942, to $35, but he swore that he was promised $20 worth of stock per week. He claimed a total of $1,620 worth of stock.

The trial court overruled a motion to dismiss the cases on the ground of variance. It is a familiar rule of the common law that a plaintiff cannot recover if the evidence establishes a wholly different case from that alleged. The strict enforcement of the rule, however, has been relaxed so that a substantial agreement between the pleadings and the proof is all that is now required. In other words, a discrepancy in an immaterial matter does not constitute a variance; but a variance does arise where there is a disagreement between the allegations and the proof in respect to any matter which in point of law is essential to the claim. *Cook v. Gill*, 83 Md. 177, 193, 34 A. 248; *Wilson v. Kelso*, 115 Md. 162, 170, 80 A. 895; *J. E. Smith Co. v. Smick*, 119 Md. 279, 86 A. 500. Our statute provides that in any action at law any of the proceedings may be amended so that the case may be tried on its real merits and the purposes of justice subserved. Code, 1939, Art. 75, Sec. 39. Consequently, if it appears that the evidence establishes a case somewhat different from that stated in the declaration, and the defendant makes seasonable objection that the proof does not conform to the case as alleged, the plaintiff may avoid a variance by applying to the court for leave to amend. 1 *Poe Pleading and Practice*, Secs. 712, 713, 714.

However, the suits before us were brought under the Speedy Judgment Act, Charter and P. L. L. of Baltimore City, 1938 Ed., Secs. 404-410. The object of the Speedy Judgment Act is to provide for the speedy collection

of debts by requiring from both plaintiff and defendant a definite sworn statement of both the claim and the defense, if any, so that the parties might know exactly wherein they differ and shape their action accordingly. The purpose of the Legislature in passing the Act was to narrow the questions in issue between the parties in any suit upon contract as far as practicable. *Adler v. Crook,* 68 Md. 494, 13 A. 153; *Katski v. Triplett,* 181 Md. 545, 30 A. 2d 764. It is provided by general law in this State that in every jurisdiction where provision has been or shall be made for the obtention of speedy judgments, when the cause of action filed with the declaration shall set forth the plaintiff's claim with the particularity required for a bill of particulars, the cause of action shall be treated as one of the pleadings in the case, and the plaintiff shall be restricted in his evidence to proof of the items so set out. Acts of 1914, Chap. 378, Code, Art. 75, Sec. 28 (107). In the instant cases the plaintiffs set out in their sworn statements the amounts of cash salary alleged to be unpaid, but made no claim that they had been promised capital stock, which has a par value of $10 per share. Their testimony constituted a variance from the causes of action alleged. *Scott v. Leary,* 34 Md. 389, 400; *Aitz Chaim Hebrew Congregation v. Butterhoff,* 141 Md. 267, 277, 118 A. 658.

Under our rules of practice and procedure, when an action at law has been tried on the facts, an appeal from the judgment, if allowed by law, may be taken according to the practice in equity. The Court of Appeals may thereupon review the proceeding on both the law and the evidence, and may set aside the judgment on the evidence if the judgment is clearly erroneous. Rules of Civil Practice and Procedure, 1941, Part Three, III, Rule 9 (c). At the trial of these cases it was admitted by the plaintiffs that they had no knowledge of the financial condition of the corporation or the value of its stock at the time they were employed. This court has adopted the rule that where an employer has agreed to

pay the salary of his employee in stock, the measure of recovery on the contract is not the par value of the stock, but its actual value at the time specified for its issuance. *Schneider v. Hagerstown Brewing Co.*, 136 Md. 151, 110 A. 218. According to a statement of assets and liabilities, audited by a certified public accountant, the corporation had no net worth on February 28, 1942. The statement showed that the corporation had a deficit of $233.63. The trial court, while characterizing the capital stock as "less than worthless," nevertheless rendered a verdict in favor of Polski for $641.25, and a verdict in favor of Popp for $729. The court explained that it arrived at the value of the stock in the following way: "The accountant indicates it is worth less than nothing per share. Like stock of a local Casualty Company, which is selling for $3 on the market, so that stock of the corporation which represents a hole in the ground nevertheless may have a market value by reason of good will, although it has no tangible assets sufficient to show value. The only thing I see is to get the thing by rule of thumb, and I am going to find that stock is worth $4.50 a share."

It is conceivable that the capital stock of an established corporation may have a nominal value in a critical time when its liabilities momentarily exceed its assets. Such a situation may arise from a number of causes. It may have a large list of stockholders who are supporting the market for various reasons. It may have thousands of customers whose business is an important asset. It may own securities which are believed likely to enhance in value on return of better conditions. It may have a board of directors confident in their ability to weather the storm and willing to extend credit to protect their interests in the company. But such circumstances do not exist here. This enterprise was organized by three men, George Sellmayer, Sidney Dembo and William Lichtenstein, in the latter part of the year 1940. Within one year they became involved in serious difficulties. On February 28, 1942, the corporation owed $1,325 for rent,

$1,682.50 for salaries, $691 for advertising, and $701.29 for taxes. It also owed $510.57 to Sellmayer. Sellmayer, no longer an officer of the corporation, swore that he thought the stock was worth $10 per share. Yet he has filed suit for receivership alleging its insolvency. It is our conclusion that the plaintiffs have failed to produce any substantial evidence to prove that the stock has actual value. For these reasons we will reverse the judgment entered in favor of Polski in the court below, and also the judgment in favor of Popp by separate mandate.

*Judgment reversed, without a new trial, with costs.*