GEORGE B. PETITE, ET UX. *v.* HOMES, INC.

[No. 9, January Term, 1945.]

378

*Decided January 31, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON and MARKELL, JJ.

*L. Wethered Barroll* with whom was *Maurice W. Zetlin,* on the brief, for the appellants.

*Benjamin L. Freeny* for the appellee.

MARKELL, J., delivered the opinion of the Court.

In this case there is a motion to dismiss the appeal on the ground that the bills of exceptions were not signed in due time. As the appeal presents some questions that do not depend upon bills of exceptions, the motion is denied. *Lichtenberg v. Joyce*, 183 Md. 689, 39 A. 2d 789, 792. The question remains whether the bills of exceptions are properly before this court.

The appeal was taken on March 18, 1944. The record was received in this court on June 16th, within the prescribed three-months' period. Code, 1939, Art. 5, Sec. 6. The record was required to be transmitted on or before June 18th. The time for signing bills of exceptions was therefore May 29th; the time for submitting them to the appellee or its counsel was May 14th; the time for return of them to the appellants and presentation to the judge for settlement May 24th. *Pennsylvania R. Co. v. Reeley*, 179 Md. 35, 38-39, 16 A. 2d 904; Code, Public Local Laws, 1930, Art. 4, Sec. 316; Charter of Baltimore City (1938), Sec. 411.

Bills of exceptions were submitted by the appellants to the appellee on May 11th and, after complaining letters in reply, were returned on May 15th without either approval or amendment. On May 18th an addition to the original draft was submitted. The same day the appellee replied that it could not "accept this paper" for reasons stated; among others, that the time for serving bills of exceptions had passed. On May 25th, at a conference between counsel for both sides and the court, the appellants urged that the bills of exceptions be signed as prepared; the appellee urged, and the court ruled, that additional testimony on behalf of the plaintiff (appellee) should be incorporated in the bills of exceptions. This was afterwards done by the appellants.

On May 26th the appellee wrote the appellants that it could not accept the paper submitted on May 18th, that service of that paper had been too late, that it could not "waive any provision of the Act," and that the ten days

for suggesting amendments had "not yet expired"; and made "formally a return" of the paper without approval or amendment. On June 12th the appellee wrote the appellants that, if the appellants wanted to include certain testimony in the part of the bills of exceptions submitted on May 18th, the appellee would "make no point now of it, because of its being late," but did intend "to raise the point in the Court of Appeals." On June 14th the appellee sent the appellants written suggestions for inclusion in the bills of exceptions. On June 14th the Court signed an order *"nunc pro tunc* as of May 11th,"* extending the time for signing bills of exceptions to June 14th, and also signed the bills of exceptions. On June 15th the appellee endorsed on the bills of exceptions a refusal to approve them "for the reason that only portions of the testimony in the above case were tendered to me or used in making up the bills of exception."

Bills of exceptions must be signed within the time prescribed, unless within that time the court extends the time. *Morgan v. Toot,* 182 Md. 601, 604, 35 A. 2d 641; *Nicholson v. Walters,* 153 Md. 16, 18, 137 A. 357. After expiration of the time on May 29th, power to extend the time could not be created by an order *nunc pro tunc* as of a date earlier than the actual date.

"However, bills of exceptions may be signed after the term has expired, if the parties consent, and this consent may be expressed or it may be inferred from the actions of the parties. They may be held to have waived any objection they had, or to be estopped by their conduct from making any." *Morgan v. Toot, supra,* 182 Md. 604, 605, 35 A. 2d 643. In *Pennsylvania R. Co. v. Reeley, supra,* 179 Md. 39, 41-44, 16 A. 2d 906, it was held that "the appellee had no power to lessen the period of five days assigned by the statute to the court," and that by accepting bills of exceptions submitted eight days too late and retaining them for the full period of ten days, *i. e.,* until eight days after the time for presentation to the judge and three days after the time for signing, the appellee "became estopped to raise the point of the ap-

pellant's delay." She was "put to her election whether to accept or refuse the submission." By choosing to accept she made it impossible for the appellant to have the bills of exceptions signed within the prescribed time. She thereby consented, by implication, to having them signed after expiration of the period prescribed.

These cases are controlling in the instant case. The time for presenting bills of exceptions to the judge expired on May 24th, the time for signing on May 29th. By retaining until May 26th the paper received on May 18th, and submitting on June 14th suggested additions to it, after participating in the conference on May 25th, the appellee was estopped from objecting to the signing of the bills of exceptions after May 29th. Moreover, the appellee can not raise in this court the point it elected not to make in the lower court at the time the bills of exceptions were signed. The bills of exceptions, therefore, are properly before this court.

This case was a suit brought under the Speedy Judgment Act, by the appellee against the appellants, to recover a balance of $1,544.20 for work done in making repairs to the defendants' property, No. 2006 Harford Road, in Baltimore. The plaintiff obtained a verdict and judgment for $1,648.43, the full amount claimed with interest; the court allowed the plaintiff a counsel fee of $50. The defendants, husband and wife, have appealed. The husband, who testified at the trial, will be referred to as the defendant.

The plaintiff's gross claim was $13,094.20, comprising (a) $10,000 for repairs made in accordance with written specifications, prepared as a contract but never signed, though the terms were agreed to, and (b) $3,094.20 for 17 items of extra work, for which the defendants "promised to pay" that sum. Payments of $7,950 and $3,500 and an allowance of $100 left a net balance of $1,544.20. The defendants disputed both the terms of the contracts and the plaintiff's performance. They contended (a) that the $10,000 contract covered not only the work mentioned in the specifications but also all other work necessary to

complete one store and four apartments, including work left undone by the plaintiff and some of the 17 items of alleged "extra work," and (b) that they were put to expense (i) to do work left undone by the plaintiff and (ii) to correct work improperly done.

The declaration contains three counts, (1) the common count for work and materials, (2) a count on the $10,000 contract, and (3) a count for the extra work. With the declaration were filed the "unsigned contract," viz., the specifications, and a statement of each of the 17 items of "extra work," and an account showing the 18 items of the plaintiff's claim and the three credits. The defendants each filed, under oath, general issue pleas and a "plea of recoupment," that the plaintiff is indebted to the defendants "in an amount greater than the plaintiff's claim," viz., $2,159.02, comprising 15 items for work left undone or uncorrected by the plaintiff and one item for interest. The "plea of recoupment" evidently was intended as a counterclaim for an affirmative judgment. The verdict makes this difference between recoupment and counterclaim immaterial. *Impervious Products Co. v. Gray,* 127 Md. 64, 67, 68, 96 A. 1; *International Harvester Co. v. Neuhauser,* 128 Md. 173, 180, 97 A. 372.

The pleadings thus presented 34 items of dispute as to facts. At the trial, which lasted three days, this number was reduced to 24. Subject to the defendant's counter claim, the plaintiff's $10,000 item and 9 of its items of "extra work," amounting to $2,057.00, were agreed upon, leaving in dispute 8 items of "extra work," amounting to $1,037.20, and the 16 items of the defendants' counterclaim for $2,159.02. Of these 24 issues of fact, as to the terms of the contract and the plaintiff's performance, 23 were submitted to the jury and by the jury's verdict were resolved in favor of the plaintiff. One item of the defendants' counterclaim, $656.75 for alleged breach of warranty of a remodeled heating plant, the court withdrew from the jury for want of evidence legally sufficient to support it. This action of the court is here for review.

The plaintiff began work in July, 1942. In October, 1942, its last item of "extra work," No. 17, was agreed upon, viz., "For furnishing all labor and materials to remodel the present heating plant and to include summer and winter hook-up with an eighty-two gallon boiler. Same to be covered and set on a stand to furnish additional radiation and anything else pertaining to the heating plant that is necessary to give you sufficient radiation to heat the house properly. This is as per our understanding with you for the lump sum of $870.00." This item in the statement filed with the declaration was taken verbatim from a letter of October 2, 1942, from the plaintiff to the defendant. It is one of the nine items agreed upon at the trial, subject to the defendants' counterclaim. In a letter of October 30, 1942 the plaintiff said: "We hereby certify that the heating plant which we are installing and altering in the said premises is satisfactory and sufficient to adequately heat all parts of the said premises, and we hereby guarantee the said heating plant for a period of at least one year, during which period we shall service the said heating plant without any charge to you."

The tenth item in the defendants' counterclaim is: "Replacing heating system, installing new steam heating boiler, material and labor, $656.75."

The work of remodeling the heating plant was in charge of a plumber named Wiessner. In December, 1942, after the work had been done, the defendant complained that the plant was using too much fuel. It was found that the oil feed line was leaking. That, the defendant testified, was "a very minor thing," but was never rectified by the plaintiff. He also testified that when he and Weissner and the plaintiff's new president, Kishter, went to the house to find the leak, Wiessner said to Kishter, "I told you that this boiler was not big enough to heat this building, no matter whether you put one booster or ten boosters on it," and Kishter said he was going to rectify this condition by taking Wiessner's advice and taking the boiler apart, adding more sections

to it and putting in a booster and an oil burner, but that was never done. In October, 1943, the defendants replaced the heating system with a coal-burning system, put in for them by Wiessner, at a cost of $656.75. Wiessner had died before the trial. Kishter on cross-examination had said that there was no conversation between him and the defendant and Wiessner regarding general insufficiency of the heating plant and that Wiessner never told him the plant would never be sufficient to heat a building of that size. Witnesses for the plaintiff testified that the plant had been inspected before the guaranty was given and had been tested afterwards, and could and did heat the house properly, and that the leak was promptly repaired.

Wiessner's alleged statement to Kishter was stricken out of the evidence, without objection or exception by the defendants at the time. After the leak occurred, the defendant complained repeatedly that the plant would not heat; at the trial he said it was "no good." Two of his tenants testified that their apartments were not sufficiently heated.

Insufficiency of the plant to heat adequately is not shown by evidence that on occasions it did not heat adequately, without showing that it was properly operated, with sufficient fuel. Cf. White Automobile Co. v. Dorsey, 119 Md. 251, 263-264, 86 A. 617 (an automobile). There is no evidence of: (a) any special qualifications of the defendant to express an opinion as to the sufficiency of a heating plant (cf. White Automobile Co. v. Dorsey, supra, 119 Md. 263, 86 A. 622) ; (b) facts which might serve as a basis for an expert or nonexpert opinion from the defendant on the subject, or for either of the opinions ascribed by him to Wiessner; or (c) the cost of (i) repairing the leak or (ii) adding to the plant in the manner ascribed to Wiessner and Kishter. The mere fact of replacement of an oil plant with a coal plant in October, 1943, is not evidence of insufficiency of the oil plant.

Wiessner's alleged statements would not show breach of contract in the work done and were not competent

evidence for that purpose. They were made after the work had been done. He—or Kishter—could not bind the plaintiff by such statements made at that time. *Pinkerton v. Slocomb,* 126 Md. 665, 673, 95 A. 965; *Noel Construction Co. v. Armored Concrete Const. Co.,* 120 Md. 237, 241-248, 87 A. 1049, Ann. Cas. 1915A, 1032; *Wigmore on Evidence,* 3d Ed., Sec. 1078. Death did not give his statements evidentiary significance or make them competent evidence; nor did Kishter's presence when the statements were made.

For a breach of warranty the buyer may maintain claim for damages either (*a*) by recoupment or (*b*) by independent action or counterclaim. Code, 1939, Art. 83, Sec. 87. Ordinarily, the measure of damages is the difference between the value of the article received and the value of the article contracted for (*White Automobile Co. v. Dorsey, supra,* 119 Md. 258, 86 A. 617), *e. g.,* the cost of correcting the defect. *Parker v. Tilghman V. Morgan, Inc.,* 170 Md. 7, 28, 183 A. 224. The buyer is not entitled to profit by replacement of the defective article with an article better than the one contracted for (*British Westinghouse Electric & Manufacturing Co. v. Underground Electric Rys. Co. of London, Ltd.,* [1912] A. C. 673, 689; *Williston* on *Sales,* 2d Ed., Sec. 614; *cf. International Motor Co. v. Oldfield,* 134 Md. 207, 214-217, 106 A. 611), or to recover the cost of unnecessary replacement when the defect can be corrected without replacement. *Parker v. Tilghman V. Morgan, Inc., supra,* 170 Md. 30-33, 183 A. 224.

In recoupment (as in an independent suit or counterclaim) the burden of proof of damages for breach of warranty is upon the buyer. *Parker v. Tilghman V. Morgan, Inc., supra,* 170 Md. 37-39, 183 A. 224. In the absence of legally sufficient evidence of damages, he cannot recover anything for the breach (except perhaps, in case of an independent suit, nominal damages). *Parker v. Tilghman V. Morgan, Inc., supra,* 170 Md. 29, 30-33, 183 A. 224; *White Automobile Co. v. Dorsey, supra,* 119 Md. 265, 266, 267, 86 A. 617; *cf. Challenge Clothes Corp. v. Polski,* 181 Md. 590, 596, 31 A. 2d 309.

We find no legally sufficient evidence of any breach of contract relating to the heating system, except the alleged failure to repair the oil leak. Such a "very minor thing" would not entitle the defendants to replace the entire oil system with a coal system. There is, however, no evidence of any measure of damages other than the cost of the new system. The court, therefore, properly withdrew this item of the defendants' counterclaim from the consideration of the jury. The 23 other issues of fact in the case were fully and fairly submitted to the jury in a charge to which no exception was taken, except for withdrawal from the jury of the $656.75 item "for a new heating plant."

The defendants contend that requirements of the Speedy Judgment Act have not been complied with. After pleas filed, issue joined, trial, verdict and judgment on the merits, noncompliance with such requirements is immaterial (*Globe Slicing Machine Co., Inc. v. Murphy,* 161 Md. 667, 674, 158 A. 26), except as affecting the legality of the counsel fee allowed under the act. *Lansburgh v. M. P. Howlett Fish & Oyster Co.,* 153 Md. 312, 319-320, 138 A. 269.

(*a*) The defendants contend that the plaintiff's claim is unliquidated and therefore is not within the Act.

The Act is applicable to suits "when the cause of action is a contract, whether in writing or not, or whether expressed or implied." Code, Public Local Laws, 1930, Art. 4, Sec. 312; Charter of Baltimore City (1938), Sec. 404. The plaintiff must file with his declaration the "writing or account by which the defendant is so indebted; or if the action be founded upon a verbal or implied contract, shall file a statement of the particulars of the defendant's indebtedness thereunder." Code, Public Local Laws, 1930, Art. 4, Sec. 313; Charter, Sec. 405. Thus the Act is applicable to suits on (1) an expressed contract in writing, (2) an expressed verbal contract, or (3) an implied contract, *e. g.,* on open account.

In the instant case the requirements of the act as to both expressed verbal contracts and implied contracts

have been complied with. The declaration contains one common count, on implied contract, and two special counts on expressed verbal contracts. With the declaration were filed an account and statements (including the unsigned contract) of the particulars of the defendants' indebtedness. These statements and also the account would be applicable to either a "verbal or implied contract," *e. g.*, to either the first count or the second and third counts.

"\* \* \* the claim, in order to be within the act, must be one for an ascertained amount of liquidated indebtedness to which a plaintiff can safely and properly swear; and the cause of action which must be filed with the declaration must be one which either on its face shows the liability of the defendant and the amount of such liability, or which itself furnishes the standard or means of arriving at such liability." *Poe on Practice*, Sec. 415, quoted in *Steuart v. Chappell*, 98 Md. 527, 531, 57 A. 17, 19, and *Blick, v. Mercantile Trust Co.*, 113 Md. 487, 490, 77 A. 844, 845.

On the face of the papers filed under the Act, the plaintiff's claim is a liquidated claim. The price for the original $10,000.00 item is specified in the unsigned contract. Of the 17 items of extra work, nine are each for an "agreed price," item No. 17 (the heating plant) is "as per our understanding with you for the lump sum of $870.00," two are for "price to us," without "profit," and the other five are for a specific "sum," "lump sum," or unit sum with total also stated. The declaration avers, as to all 17 items, that the defendants "promised to pay therefor the sum of" $3,094.20. We think all the 17 items purport to be "agreed prices" or otherwise liquidated amounts. The amount claimed would not become unliquidated if the jury should allow less. *Dirickson v. Showell*, 79 Md. 49, 53, 54, 29 A. 72. In the instant case the jury evidently found all the items to be liquidated and to be supported by the facts.

(*b*) The defendants demurred to the declaration and each count, on the grounds (*i*) that because the $10,-

000.00 contract was unsigned, suit for that sum can be maintained only on a *quantum meruit* and (*ii*) that because the defendants' part payments are not mentioned in the declaration, the declaration and affidavit are inconsistent.

Special counts in assumpsit, like the Speedy Judgment Act, are applicable to expressed "verbal contracts." *Poe on Pleadings,* Secs. 563, 564; *Bright v. Ganas,* 171 Md. 493, 496, 497, 189 A. 427. Common counts are applicable to implied contracts, not to all verbal contracts. *Cf.* Code, 1939, Art. 75, Sec. 28 (18) (breach of promise of marriage).

There is no inconsistency between the declaration and the affidavit. The plaintiff's gross claim is stated in the declaration, the net claim in the affidavit. The gross claim and the part payments and credit are itemized, and the net claim shown, in the account. It is not necessary to state part payments in the declaration. After passage of the English Common Law Procedure Act of 1852 it became customary to show part payments either in the declaration or in the plaintiff's particulars. *Chitty on Pleading,* I 295, 348, 373; II 36-37, 443. The latter alternative was substantially equivalent to the plaintiff's procedure under the Speedy Judgment Act in the instant case.

(*c*) The defendants complain that they were not served with copies of the "cause of action" filed with the declaration. Since 1886 by statute, and previously "by long established practice in the courts of the City of Baltimore, a defendant is not required to plead to a declaration unless a copy of it has been served upon him." *May v. Wolvington,* 69 Md. 117, 123, 124, 14 A. 706, 709; Acts of 1886, Ch. 184, Secs. 166, 168; Code, Public Local Laws, 1930, Secs. 308, 310; Baltimore City Charter (1938), Secs. 400, 402. These statutory provisions originated in the same Act of 1886 as the Speedy Judgment Act (Acts of 1886, Ch. 184, Secs. 170-172; Code, 1939, Secs. 312-315 B; Charter, Secs. 404-410), but are not part of the Speedy Judgment Act and are applicable to

all cases, not merely to "speedy judgment" cases. *Fick v. Towers*, 152 Md. 335, 339-341, 136 A. 648. The Act of 1914, Ch. 378 (Code, Art. 75, Sec. 28, Sub-sec. 107) provides that "the cause of action filed with the declaration \* \* \* shall become and be taken and treated as one of the pleadings in the case, and the plaintiff shall be restricted in his evidence to proof of the items so set out." No statutory provision expressly requires service of a copy of the "cause of action."

Service of process is a mundane function. The process-server must serve papers, not ponder their legal effect. For his purpose a "declaration" is a declaration, and a "cause of action filed with the declaration" is something else—even though in a larger sense, and for different purposes, the cause of action is "a part of each count in its declaration." *Power v. Asphalt Products Corp.*, 162 Md. 175, 184, 159 A. 251, 254. If service of copies of the cause of action had been intended, it would have been easy to say so. *Cf. Poe on Practice*, Sec. 423 F; Cecil County, Acts of 1922, Ch. 363. At this late date we can not read such a requirement into the Act of 1886 through the Act of 1914, which was enacted for quite a different purpose. *Aitz Chaim Congregation v. Butterhoff*, 141 Md. 267, 276, 277, 118 A. 658.

This case was continued from the October, 1944, term, at the cost of the appellee under Rule 38 of this Court.

> *Judgment affirmed, with costs, except cost of continuance.*